[No. 13722.   In Bank.—March 31, 1891.]

## THE NATIONAL BANK OF D. O. MILLS & CO., RESPONDENT, v. THE UNION INSURANCE COMPANY OF SAN FRANCISCO, APPELLANT.

88   497
116   229
88   497
L128   21

INSURANCE—RECITAL IN POLICY—LEASE OF PREMISES—WARRANTY—UNINTENTIONAL MISSTATEMENT.—A recital in an insurance policy that "it is understood and agreed that the within-described premises have been leased" by certain parties named will not be held to be an express warranty, where it appears that the property had formerly been leased to the parties named, although not then so leased, and that there was no intentional misstatement by the assured, if by another provision of the policy it was to become void only in case of an intentional misstatement or concealment of a material fact.

ID.—EXPRESS WARRANTY—CONSTRUCTION IN FAVOR OF ASSURED.—Where there is any doubt as to whether a statement in an insurance policy is an express warranty, the court should lean against that construction which imposes upon the assured the obligation of a warranty.

ID.—STATEMENT OF FACT—INTENTION OF PARTIES.—Although under section 2607 of the Civil Code a statement in a policy of a matter relating to the person or thing insured, or to the risk as a fact, is an express warranty, yet if, taking the entire policy in all its terms and language, it can be seen that such was not the intention of the parties, the statement of fact will not be deemed an express warranty.

ID.—CHANGE OF POSSESSION OF INSURED PREMISES—NOTICE TO INSURANCE COMPANY—KNOWLEDGE OF MORTGAGEE—INDORSEMENT ON POLICY.—The fact that the insurance company has no notice of a change of possession

LXXXVIII. CAL.   32

of the insured premises will not invalidate the insurance as to a mortgagee who is not aware of the change, if an indorsement on the policy provides that the mortgagee shall become payee to the extent of the mortgage, and shall not be affected by the acts or negligence of the mortgagor, but must notify the insurance company of any change in title or possession of the property whenever he shall become aware thereof.

Id.— RIGHTS OF MORTGAGEE — EFFECT OF SALE UNDER FORECLOSURE. — A mortgagee of insured property, to whom the loss is made payable, is entitled to recover the loss to the full extent of the mortgage debt, although the fire occurred after a foreclosure sale and purchase by the mortgagee thereat, but before the time for redemption had elapsed, and before the execution of a sheriff's deed to the mortgagee.

Id. — EXTINGUISHMENT OF DEBT BY SALE — PURCHASE BY MORTGAGEE. — There is no payment of the mortgage debt *pro tanto*, or extinguishment of the interest of the mortgagee in the mortgaged premises, by the mere crediting on the mortgage debt of a bid made by the mortgagee at the foreclosure sale.

Id. — FORECLOSURE EMBRACES SALE AND DEED. — The foreclosure of a mortgage embraces the sale of the property, and the execution of the sheriff's deed, as well as the decree of the court ordering the sale; and a mortgage is not foreclosed until the mortgagor's right of redemption is cut off.

Id. — ALIENATION OF TITLE — EFFECT OF FORECLOSURE — RECOVERY ON POLICY. — Where insurance is effected on mortgaged property, and the loss is made payable to the mortgagee, and the mortgage is foreclosed, the property sold, and a deed made to the mortgagee, it seems that there is not such an alienation of the title as to forfeit the mortgagee's right to recover on the policy.

APPEAL from a judgment of the Superior Court of Sacramento County, and from an order denying a new trial.

The facts are stated in the opinion of the court.

*Smith & Pomeroy,* for Appellant.

The surrender of possession by the lessees before the expiration of the policy of December 27, 1886, without notifying or obtaining permission of the insurance company, avoided that policy as to the assured owner of the premises. ( *Wenzel* v. *Commercial Ins. Co.*, 67 Cal. 438, 440.) The policy of the date of May 25, 1887, was avoided, *ab initio*, as to the Johnston Brandy and Wine Manufacturing Company by reason of the breach of the ex-

press warranty that at the time of its execution the premises were leased to Messrs. Walden & Co. (See Civ. Code, secs. 1603–1612; *Wall* v. *Ins. Co.*, 7 N. Y. 370; *O'Niel* v. *Ins. Co.*, 3 N. Y. 122; *Stout* v. *Ins. Co.*, 12 Iowa, 371; 75 Am. Dec. 539; *Banking & Ins. Co.* v. *Stone*, 49 Tex. 4; *Franklin F. Ins. Co.* v. *Martin*, 40 N. J. L. 568; 29 Am. Rep. 271; *Alexander* v. *Ins. Co.*, 66 N. Y. 464; 23 Am. Rep. 76; *Baker* v. *German Fire Ins. Co.*, 124 Ind. 490.) Each of the policies was avoided as to the Johnston Brandy and Wine Manufacturing Company by reason of the want of operation of the insured premises, and by reason of their vacancy and non-occupation. (See May on Insurance, secs. 248, 249; Wood on Fire Insurance, sec. 89; *Keith* v. *Ins. Co.*, 10 Allen, 228; *Park* v. *Agricultural Ins. Co.*, 51 Conn. 504; *Bennett* v. *Agricultural Ins. Co.*, 51 Conn. 420; *Herrman* v. *Adriatic F. Ins. Co.*, 85 N. Y. 163; *Hartford Fire Ins. Co.* v. *Webster*, 69 Ill. 392; *American Ins. Co.* v. *Foster*, 92 Ill. 334; 34 Am. Rep. 134; *Hartshorne* v. *Agricultural Ins. Co.*, 14 Atl. Rep. 615 (N. J.); *Ins. Co.* v. *Wells*, 42 Ohio St. 519; *Fitzgerald* v. *Conn. Ins. Co.*, 42 Wis. 473; *Hotchkiss* v. *Home Ins. Co.*, 58 Wis. 297; *Fitch* v. *N. B. & M. Ins. Co.*, 136 Mass. 491; *Franklin Savings Inst.* v. *Cent. etc. Ins. Co.*, 119 Mass. 240; *Halpin* v. *Ætna Ins. Co.*, 120 N. Y. 70; *Snyder* v. *F. F. Ins. Co.*, 78 Iowa, 146; *Halpin* v. *Phenix Ins. Co.*, 118 N. Y. 165.) Each of the policies, having been avoided as to the Johnston Brandy and Wine Manufacturing Company, were avoided also as to the National Bank of D. O. Mills & Co. (Civ. Code, sec. 2541. See also *Franklin Savings Inst.* v. *Central Ins. Co.*, 119 Mass. 240; *Fogg* v. *Middlesex Ins. Co.*, 10 Cush. 337; *Grosvenor* v. *Atlantic Ins. Co.*, 17 N. Y. 392; *Buffalo S. E. Works* v. *Sun M. Ins. Co.*, 17 N. Y. 401; *Springfield F. & M. I. Co.* v. *Allen*, 43 N. Y. 389; 3 Am. Rep. 711.) A mortgage clause similar to those in question is not an absolute guaranty of the validity of the contract of insurance, and does not operate as a waiver of breaches of

warranties or false representations which avoid the policy *ab initio*, but simply is a waiver as to certain future breaches by the mortgagor. (*Omnium Securities Company* v. *Canada Fire and Mutual Ins. Co.*, 1 Ontario, 494; *Graham* v. *Fireman's Ins. Co.*, 87 N. Y. 69–78; 41 Am. Rep. 348.) The interest of a mortgagee in insured property is measured by the amount of his mortgage debt at the time of the loss, and if at such time his debt is extinguished, either wholly or in part, his interest as mortgagee is also extinguished, either entirely or *pro tanto*. (Civ. Code, secs. 2551, 2552; May on Insurance, sec. 424; Wood on Insurance, sec. 447; *Hadley* v. *H. H. F. Ins. Co.*, 55 N. H. 110; *Mutual Ins. Co.* v. *Andes Ins. Co.*, 67 Ill. 362; *Smith* v. *Columbia Ins. Co.*, 17 Pa. St. 253; 55 Am. Dec. 546; *Carpenter* v. *Providence etc. Ins. Co.*, 16 Pet. 495; *Excelsior Fire Ins. Co.* v. *Royal Ins. Co.*, 55 N. Y. 343; 14 Am. Rep. 271; *Richardson* v. *Home Ins. Co.*, 21 U. C. C. P. 293; *Sussex etc. Ins. Co.* v. *Woodruff*, 26 N. J. L. 541; *Hartford Ins. Co.* v. *Olcott*, 77 Ill. 439; *City Five Cent. S. Bank* v. *P. F. Ins. Co.*, 122 Mass. 165; *Phœnix Fire Ins. Co.* v. *Floyd*, 19 Hun, 237; *Hastings* v. *Fire Ins. Co.*, 73 N. Y. 141.) The legal effect of the foreclosure and sale was to pay the bank's mortgage debt *pro tanto*, — that is, to the extent of six thousand dollars, to *pro tanto* extinguish its interest as a mortgagee in the insured property, — and consequently to prevent the indorsements of the policies from operating as a waiver of the breaches of conditions of the policies by the Brandy and Wine Company, except to the extent that its mortgage debt remained unpaid. (See 2 Jones on Mortgages, sec. 953; Code Civ. Proc., sec. 691; *McLaren* v. *Hart. Ins. Co.*, 5 N. Y. 151.)

*Denson & Oatman*, and *Add C. Hinkson*, for Respondent.

The fact as to whether or not the insured premises were leased to Messrs. Walden & Co. at the time the

policy was issued was immaterial, because "materiality is to be determined, not by the event, but solely by the probable and reasonable influence of the facts upon the party to whom the communication is due in forming his estimate of the disadvantages of the proposed contract or in making his inquiries." (Civ. Code, sec. 2665.) The test of the materiality of a representation is, that it influences the insurer to accept the risk, and what premiums to charge. (*Ryan* v. *Springfield Ins. Co.*, 46 Wis. 671; *Columbus Ins. Co.* v. *Lawrence*, 10 Pet. 507.) And the materiality of the representation that the insured premises had been leased to Messrs. Walden & Co. was a question of fact for the court to determine. (*McLanahan* v. *Universal Ins. Co.*, 1 Pet. 170; *Life Ins. Co.* v. *Francisco*, 17 Wall. 672; *Boardman* v. *H. N. etc. Ins. Co.*, 20 N. H. 551.) Insurance policies are to be construed according to the intent of the parties, like other contracts, except that "the rule is, that policies are to be construed liberally in favor of the assured." (*Wells, Fargo & Co.* v. *Pacific Ins. Co.*, 44 Cal. 411; *Rolker* v. *Great Western Ins. Co.*, 3 Keyes, 23; Phillips on Insurance, 43.) Conditions are to be construed according to the intent of the parties, but most strongly against the party to whom they are meant to extend. (Bacon's Abridgment, tit. Conditions.) Conditions imposing burdens are to be construed most strictly against those for whose benefit they are introduced. (1 Sum. 440.) The court will adopt such interpretation as will sustain the contract and avoid a forfeiture. (3 Bacon's Abridgment, tit. Conditions; *Wells, Fargo & Co.* v. *Pacific Ins. Co.*, 44 Cal. 406–409.) The foreclosure of the mortgage did not work any change in the title before the time for redemption expired. (*Stephens* v. *M. F. Ins. Co.*, 43 Ill. 327; *Swazey* v. *Chandler*, 11 Ill. 445; *Johnson* v. *Baker*, 38 Ill. 98; 87 Am. Dec. 293; Angell on Insurance, sec. 58; *Clark* v. *N. E. Mut. Ins. Co.*, 6 Cush. 342; 53 Am. Dec. 52; *Strong* v. *Mfrs. Ins. Co.*, 10 Pick. 40; 20 Am.

Dec. 509.)    The insurance by the Johnston Brandy and Wine Manufacturing Company in its own name, together with the agreement of the appellant to pay any losses to its mortgagees, are tantamount to an insurance by and in the name of the mortgagor for the benefit of and payable to the mortgagees, and in such case the mortgagees may recover.    (*King* v. *State Mut. F. Ins. Co.*, 7 Cush. 5; 54 Am. Dec. 699; 1 Jones on Mortgages, sec. 409.) The indorsements upon the policies are the contracts by which respondents' rights are to be measured in this action, and they were not bound by the conditions imposed upon the Johnston Brandy and Wine Manufacturing Company, except as stated in the indorsements. (*King* v. *State Mut. F. Ins. Co.*, 7 Cush. 5; 54 Am. Dec. 700.)

FOOTE, C. — On the twenty-seventh day of December, 1886, the appellant, a fire insurance company, issued to the Johnston Brandy and Wine Manufacturing Company a policy of insurance against loss or damage by fire, upon certain property therein mentioned, to the amount of three thousand dollars.    On the face of this policy was attached the following indorsement: —

" Loss (if any) payable to National Bank of D. O. Mills & Co., as herein provided.

" It is hereby agreed that this policy, as to the interests of the mortgagee or trustee only therein, shall not be invalidated by any act or negligence of the mortgagor or owner of the property insured, nor by occupation of the premises for purposes more hazardous than are permitted by the terms of this policy, nor by any change in title or possession of the property insured; provided, however, that whenever the said mortgagee or trustee shall become aware of any act or negligence of the mortgagor or owner which would, except as to such mortgagee or trustee, invalidate this policy, or of any occupation of the premises for purposes more hazardous than are per-

mitted by the terms of this policy, or of any change in title or possession of the property insured, he will at once notify this company thereof; and provided, also, that he will on demand pay to this company the additional premium charged by this company on account of any increased risk for the entire term of this policy; and failure to so notify this company, or to so pay said additional premium, shall avoid this contract."

It further appears that there was an indorsement made thereon that on the 2d of March, 1887, the National Bank of D. O. Mills & Co. had notified the insurance company that it, as *mortgagee*, had instituted a suit for foreclosure on the property embraced in the policy, and that the same had been accepted by that company without prejudice to the policy.

On the 25th of May, 1887, the same insurance company issued a policy of insurance of the same character and to the same parties, and the loss made payable in the same way and upon like conditions, for the sum of two thousand dollars. It appears that the property insured was destroyed by two successive fires in the month of September (about the 3d and 20th, in the year 1887), and that the value of the building and other property burned at said times was fully equal in value to the amount of the insurance.

The National Bank of D. O. Mills & Co., to whom the loss was made payable, and who held a mortgage for six thousand dollars on this property, brought this action to recover for the loss, interest, and costs, and obtained judgment as prayed for; from which, and an order denying a new trial, this appeal is taken.

The appellant urges, in support of its contention, that the first finding of the trial court, " that all and singular the averments of the complaint are true," and the second finding, " that all and singular the matters and things stated in defendant's amended answer and the general averments, and both of the general and special defenses

therein set forth, are untrue, excepting," etc., are unsupported by the evidence.

The point made in this behalf is, that at the time of the issuing of the policy dated the 25th of May, 1887, it was made an express warranty therein by the insured that the premises were *then* leased to Messrs. Walden & Co., when in fact they were not so leased, and that therefore, by its terms, the policy was void for such misrepresentation.

Conceding that the statement in the policy, if taken by itself, and without reference to other portions of that statement, viz., " it is understood and agreed that the within-described premises have been leased by Messrs. Walden & Co.," is an express warranty, under section 2607 of the Civil Code, which reads: "A statement in a policy, of a matter relating to the person or thing insured, or to the risk, as a fact, is an express warranty thereof," nevertheless if, taking the entire policy in all its terms and language, it can be perceived that such was not the intention of the parties, such an expression will not be held to be an express warranty. And where there is any doubt as to the construction to be given to language in such a matter, " the court should lean against that construction which imposes upon the assured the obligation of a warranty." (*National Bank* v. *Insurance Co.*, 95 U. S. 679.)

In another part of this policy there occurs this clause: " Fraud, false swearing, misrepresentation, or concealment of a material fact by the insured, whether in the application for this policy, proofs of loss, or otherwise, shall render this policy void."

Thus it seems that it is the intentional misstatement or concealment of a material fact which rendered the policy void, and not the mere fact that a statement therein as to the material matter is untrue. The evidence in this case shows that there was no intentional misstatement as to the leasing of the property to Walden

& Co.  These parties did have a verbal lease of the prem-
ises up to the 30th of April, 1887, and this fact, and the
further fact that the language of the policy is "have
been" leased, goes far to create the impression that as
the lease had been so recent, the Johnston Brandy and
Wine Manufacturing Company, having that in mind,
might have been of the impression that these parties
still had a lease, or perhaps meant to say that they *had
had a lease.*

This view of the matter in hand seems to be in accord
with previous adjudications of the appellate court.  In
*Wheaton* v. *Insurance Co.*, 76 Cal. 419, 9 Am. St. Rep. 216,
a somewhat similar question was involved, and it was
contended that the statement of the insured, in his ap-
plication, as to the value of the property, was an express
warranty.  The alleged warranty was in this language:
"Special reference being made to assured's application
and survey No. 261,707, which is his warranty, and a
part hereof."  In another part of the policy there was
this clause: "If any false representation is made by the
assured of the condition, situation, or occupancy of the
property, or any over-valuation, or any *misrepresentation*
whatever, either in a written application or otherwise,
. . . . this policy shall become void."

The appellate court said (p. 422): " In *Helbing* v. *Svea
Ins. Co.*, 54 Cal. 156, 35 Am. Rep. 72, it was held that a
provision in a policy of insurance that the application
shall be considered a warranty, and if the property
insured is over-valued in it the policy shall be void,
applies only where the statements as to value are inten-
tionally false; that the question of fraud is one of fact;
that, although, where the discrepancy between the state-
ment in the application and the actual value of the
property is so great as to convey the conviction of fraud
to the reasonable mind, the jury may and ought to find
fraud, yet, where the discrepancy is very considerable,
the jury may find the application not to have been

fraudulent, even in the absence of explanatory evidence.
. . . . Moreover, the language of the provision in the
policy here sued on, that if any false representation is
made by the assured, etc., the policy shall become void,
when read as a whole, very clearly shows that a willful
misrepresentation as to the value of the property, or one
made with such gross and reckless carelessness as in the
law would be treated as willful, was in the contemplation
of the parties. If so, the previous clause does not make
the valuation a warranty. Even when the statements
in the application are declared to be warranties, they
will not be regarded as such if qualified by other stipu-
lations, which afford a fair inference that the parties
themselves did not so intend them."

By the findings it has been determined by the trial
court as a fact that the assured did not intentionally mis-
represent any fact to exist, material to the risk, which did
not exist, and as heretofore stated, we think the findings
on this point are sustained by the evidence.

The appellant claims also that the policy of the 27th
of December, 1886, was void as to the Johnston Brandy
and Wine Manufacturing Company, because the lessees,
Walden & Co., were warranted to be the tenants then,
and in possession, and that when these tenants abandoned
the possession of the premises without notice given by the
assured to the company, the policy became void.

This statement of the existence of the lease to Walden
& Co., if it stated such existence, was not a warranty in
either of the policies, as we have seen, and the change of
possession, if it took place without notice, did not concern
the plaintiff here, for it was not to be affected by any
act of this kind, unless notice was brought home to it of
such change of possession, and it further failed to notify
the company. The evidence is sufficient to show that
the plaintiff had no knowledge of any change in the
possession of the property from Walden & Co. back to
the Johnston Brandy and Wine Manufacturing Com-

pany, nor that the premises were vacated or unoccupied, even conceding that such was the fact, under a proper interpretation of the language of the policies on these points. If it had no such knowledge, it was not bound to communicate it, and was protected by the indorsement on the policy.

It follows, therefore, that unless the plaintiff here has lost its right by reason of something which is shown by the evidence to have transpired *before the loss*, by which the rights of the plaintiff under the terms of the indorsement on the policies are affected, there was no error committed in the rendition of the judgment and the refusal to grant a new trial.

In this connection the appellant contends " that the interest of a mortgagee in insured property is measured by the amount of his mortgage debt at the time of the loss; and if at such time his debt is extinguished, either wholly or in part, his interest as a mortgagee is also extinguished, either entirely or *pro tanto*"; and that " the mortgage debt " of the plaintiff " having been *pro tanto* extinguished to the extent of six thousand dollars by reason of the foreclosure sale and the application of the proceeds to the mortgage indebtedness, the mortgage clause operated as a protection to the plaintiff only to the extent that its indebtedness remained unpaid after the sale."

It is true that the plaintiff proceeded to foreclose the mortgage, and that of this intention the defendant had notice; and that the property was bought in at sheriff's sale for the plaintiff, a credit of six thousand dollars made upon the judgment, and a certificate of purchase issued. But when the fire occurred, the deed had not been executed and the legal title had not been passed, the time for redemption not having elapsed. It is not pretended that there was any payment of money on the judgment. The bid of the plaintiff was credited on the judgment, and a receipt given to balance the

sheriff's account of the foreclosure sale. But there would never have been any actual payment of money received by the plaintiff unless it had been paid in upon the redemption of the property, or it had, upon the failure of redemption, received a deed. In fact, the plaintiff never got a deed until after the loss had occurred, no redemption having taken place.

In this connection the argument by the appellant is, that the legal effect of the foreclosure was to pay the plaintiff's debt *pro tanto*, and to that extent to extinguish its interest as a mortgagee in the insured property.

It has been held by the appellate court of this state "that the foreclosure of a mortgage" embraces the sale of the property, and the execution of the sheriff's deed, as well as the decree of the court ordering the sale. A mortgage cannot be said to be foreclosed, even in the sense of our code, until the mortgagor's right of redemption is cut off. (*Goldtree* v. *McAllister*, 86 Cal. 105.) Tested by this rule, since the time for redemption had not elapsed when the foreclosure took place and loss occurred, and no deed had been made to the mortgagee, there had been no foreclosure of the mortgage. And so far as the question of payment of the mortgage debt is concerned, as bearing upon the matter of the extinguishment *pro tanto* of the insurable interest of the mortgagee, it was held in *Bragg* v. *New England Mut. Fire Ins. Co.*, 25 N. H. 298, that where in a policy such as this the insurance is effected on the property of one person, and the loss made payable to the mortgagee, another person, that even upon a foreclosure, where the property is sold and a deed made to the mortgagee, there is not such an alienation of the title as to forfeit the right to recover on the policy. For if the mortgagee thus acquires an additional interest in the property, it is a potential reason why he would be more interested in protecting the property insured; and such a change of title, although within the language of the proviso against change of

title or sale, or transfer, is not within its spirit and purpose, and will not vitiate the policy; and the instance of a case where the title becomes absolute in a mortgage by foreclosure is cited by Mr. May, in his work on insurance, to illustrate this principle. (May on Insurance, sec. 275.) To much the same effect is it held in *Heaton* v. *Manhattan Fire Ins. Co.*, 7 R. I. 508.

Unless the right of redemption has been extinguished there is no payment *pro tanto* by the mortgagor at the sale. (*West* v. *Chamberlin*, 8 Pick. 338.) Where no deed has passed, as we have seen, the foreclosure is incomplete, and no payment has been made.

If the deed had been made when the fire occurred, and the right of redemption had been cut off, there would have been a payment made by the bid. But even then, under the authorities, it seems as if there would have been no change of title or extinguishment of interest which would have affected the policy.

For these reasons, we advise that the judgment and order be affirmed.

BELCHER, C., and VANCLIEF, C., concurred.

The COURT. — For the reasons given in the foregoing opinion, the judgment and order are affirmed.

BEATTY, C. J., being disqualified, did not participate in the above opinion.

Rehearing denied.