[Civ. No. 891. Fourth Appellate District.—August 11, 1932.]

A. J. SAVAGE et al., Respondents, v. NORWICH UNION FIRE INSURANCE SOCIETY, LIMITED (a Corporation), Appellant.

A. J. SAVAGE et al., Respondents, v. PACIFIC FIRE INSURANCE COMPANY (a Corporation), Appellant.

Overton, Lyman & Plumb for Appellants.

Edward J. Kelly for Respondents.

MORTON, J., *pro tem.*—By stipulation of the respective parties the two above-entitled actions, tried jointly, were consolidated on appeal. Both actions concern contracts of insurance. Respondents A. J. Savage and Helen M. Savage, husband and wife, were engaged in the gun manufacturing business at La Mesa in San Diego County under the fictitious name of Middlefield Arms Corporation. On or about March 16, 1928, appellant Pacific Fire Insurance Company, through its duly authorized agent in San Diego, M. G. White, issued a policy of fire insurance 'to respondents covering certain merchandise, gun machinery, tools, materials and parts manufactured or in the process of manufacturing in respondents' manufacturing plant. Appellant Norwich Union Fire Insurance Society on April 19, 1928, through its duly authorized agent in San Diego, M. G. White, issued to respondent a policy of fire insurance covering the frame factory building fixtures, office and workshop furniture and equipment. At noon on April 30, 1928, a fire destroyed the building and major portion of the personal property therein. According to the evidence, A. J. Savage immediately notified the insurance agent White, who said: "All right, I'll take care of the matter." Several telephone conversations occurred between White and Savage and in one of these White told

Savage that the matter was in the hands of Mr. Thomas, the Pacific Coast Adjustment Bureau's branch manager, and that it would be safe for Savage to deal with him. White had handled Savage's fire insurance for more than twelve years and had assisted in adjusting a prior fire loss.

It was stipulated by counsel that an investigation of the fire was made by Thomas on behalf of the appellant companies. Five or six days after the fire Thomas called on Savage, looked over the burned property, asked questions about the machinery and ordered Savage to care for it until he could send out another man. At his request Savage prepared an inventory of his loss, giving the cost and quantity of each article and amount claimed thereon. At the second meeting Thomas secured from Savage and his wife a nonwaiver agreement to the effect that no action taken by the companies investigating the fire or as to fixing the amount of loss should be construed as a waiver of any rights of any of the parties. A small balance was unpaid on the purchase price of a part of the destroyed machinery which had been bought on an installment contract. Savage testified that Thomas told him he desired to investigate this purchase contract and for that reason needed the nonwaiver agreement, therefore, he and his wife signed it.

A. J. Savage was a mechanical engineering expert and the machinery destroyed was largely precision instruments. He testified: "My business is designing and engineering and manufacturing fire arms and all different types of devices to go with those products." Because of their peculiar nature it was difficult to reach an agreement as to values. At one of the conferences with Thomas, about fifteen days after the fire, in order to justify his values on the inventory, Savage brought with him James W. Patten, a gun expert, who knew Savage's plant and had a knowledge of this type of machinery. Regarding this meeting, Savage testified as follows: "Mr. Thomas went into the general and particulars on the loss, and Mr. Patten was a witness and he followed all the details and when it was over I asked Mr. Thomas if there was anything further that he wanted me to do on the papers or the loss or anything and he said, 'Mr. Savage, there is nothing more you need to do. It's all O. K.' and I dismissed the subject because he said that he sent in the report to his home office. . . . There was a dispute

between me and Mr. Thomas as to the price items on the inventory. There was no general—particular—I don't remember much in detail. 'Well,' he says, 'this is like a jewelry shop', he said. 'These are specials.' And Mr. Thomas acted efficiently for his company on that.'' Savage's testimony was corroborated in full by the testimony of Patten.

Several times Savage called Thomas on the telephone to see how he was getting along with the claim and was told it was under advisement and to call up occasionally. The last time he called, Thomas told him to see the company's lawyer. Instead, Savage went to his own lawyer. Sixty days had then expired since the fire and Savage's attorney finding that no proof of loss had been filed, immediately filed one. Both policies were on the California standard form of fire insurance policy. The provision as to proof of loss in each policy read as follows:

''Duty of Insured in Case of Loss. When a loss occurs the insured must give to this company written notice thereof without unnecessary delay; and shall protect the property from further damage; forthwith separate the damaged and undamaged personal property and put it in the best possible order; and without unnecessary delay make a complete inventory stating as far as possible the quantity and cost of each article, and the amount claimed thereon.

''Within sixty days after the commencement of the fire the insured shall render to the company at its main office in California named herein preliminary proof of loss consisting of a written statement signed and sworn to by him setting forth:—(a) his knowledge and belief as to the origin of the fire; (b) the interest of the insured and of all others in the property; (c) the cash value of the different articles or properties and the amount of loss thereon; (d) all incumbrances thereon; (e) all other insurance, whether valid or not, covering any of said articles or properties; (f) a copy of the descriptions and schedules in all other policies unless similar to this policy, and in that event, a statement as to the amounts for which the different articles or properties are insured in each of the other policies; (g) any changes of title, use, occupation, location or possession of said property since the issuance of this policy; (h) by whom and for what purpose any building herein described, and

the several parts thereof, were occupied at the time of the fire.

"If the company claims that the preliminary proof of loss is defective and within five days after the receipt thereof (without admitting the amount of loss or any part thereof) notifies in writing the insured, or the party making such proof of loss, of the alleged defects (specifically stating them) and requests that they be remedied by verified amendments the insured or such party within ten days after the receipt of such notification and request must comply therewith or, if unable so to do, present to the company an affidavit to that effect.

"The insured shall also furnish, if required, as far as it is practicable to obtain the same, verified plans and specifications of any buildings, fixtures or machinery destroyed or damaged; and the insured shall exhibit to any person designated in writing by this company all that remains of any property herein described and shall submit to examination under oath, as often as required, by any such person, and subscribe to the testimony so given and shall produce to such person for examination all books of account, bills, invoices and other vouchers, and permit extracts and copies thereof to be made, and in case the originals are lost certified copies, if obtainable, shall be produced."

Liability under the policies was finally denied by both insurance companies. Plaintiffs filed suit and alleged that the defendants waived the filing of proof of loss within the time provided by the policies by their statements and their conduct. Each defendant answered, setting up as a special defense the failure of plaintiffs to comply with the terms of the policies by filing the requisite proof of loss, and further that plaintiffs were not the sole and unconditional owners of the property covered by the policies of insurance and that therefore the policies were void. Judgment was rendered for the plaintiffs and the defendants appeal.

▮ Appellants contend that in both cases the evidence is insufficient to support the finding that they had waived the filing of formal proof of loss. Respondents plead a waiver by appellants of these requirements of the policies. On the general principle of waiver, appellants cite *White* v. *Home Mutual Ins. Co.*, 128 Cal. 131 [60 Pac. 666]. In that case a waiver was not plead. In the instant case the

question involved is one of fact to be determined under the law as analyzed and distinguished in *Estrada* v. *Queen Ins. Co.*, 107 Cal. App. 504 [290 Pac. 525, 526]. The rule there stated is as follows: " 'Any conduct on the part of the insurer which tends to create a belief in the mind of the claimant under the policy that notice need not be given or that proofs of loss will be unnecessary, operates as a waiver of a policy provision requiring such notice of proofs; . . . Thus proof of loss is waived by denial of liability, or by a statement by the adjuster that proofs are unnecessary and that the loss will be adjusted without them, or by a statement by the insurer's agent, after loss, that he would attend to giving notice, followed by the appearance of an adjuster . . . ' " (14 Cal. Jur. 576.)

In support of the finding of the trial court we find evidence that immediately after the fire Savage called White, and White stated to him, "All right, I'll take care of the matter." Shortly thereafter he informed Savage that E. L. Thomas was authorized by both insurance companies to adjust the loss. Thomas inspected the debris from the fire and ordered Savage to care for it until he sent out another man. He requested a detailed inventory, discussed values of the destroyed machinery and generally gave the impression that he was conducting a careful, just and impartial adjustment of the fire loss. Savage furnished him everything he requested and the only issue between them appears to have been as to values. Finally we have the conversation at which Patten was a disinterested witness. He testified regarding this conversation between Thomas and Savage as follows: "They talked about the fire loss. Mr. Thomas said that he had all he wanted. Mr. Thomas did not state whether or not there was any necessity for Mr. Savage to make any further statements or proofs. He said that he had all that was necessary. . . . I remember they were talking about the complete fire loss and that Mr. Savage had filed the statement of loss, which was all that was necessary. When they had talked about the loss Mr. Thomas said that he had all the information necessary and that he would turn in his report to his office the first of the week. All I remember was that Mr. Thomas said that everything was O. K. and that he would turn his report in. I have never seen Mr. Thomas before or since the

meeting referred to. I don't remember the date. It was probably about three weeks after the fire at about noon.'' No question as to the validity of the claim or of the necessary proof arose until after the expiration of the sixty days, when Thomas referred Savage to the company's lawyers. If Thomas did not intentionally mislead Savage he successfully lulled him into an attitude of reliance and confidence that his rights, as well as those of the companies, were being looked after by him. Appellants did not remain silent and wait for the filing of formal proof of loss. They appointed a representative, who immediately took charge of the situation, requested information, inventories, and never raised the question of formal proof of loss. If the insured must deal with the company's representative at arm's length the latter should not enter the situation as an impartial adjuster or arbitrator. Savage was assured by White that he could safely deal with Thomas. Savage relied on this assurance, as his testimony shows: "No one was present but Mr. Patten, Mr. Thomas and myself, and Mr. Thomas said, 'Mr. Savage, you needn't do anything more on the matter of these papers.' I didn't file a claim of proof of loss because I trusted Mr. Thomas and relied upon this statement.''

The record discloses ample evidence to show that the procedure and conduct on the part of appellants' representative created the belief in the mind of the claimants that the notice and preliminary proof was dispensed with by going on to the determination of the loss and the matter of payment of the claim. Furthermore, he informed the claimants that nothing more was required on their part. (*Carroll* v. *Girard Fire Ins. Co.,* 72 Cal. 297 [13 Pac. 863]; *Estrada* v. *Queen Ins. Co.,* 107. Cal. App. 504, at 510 [290 Pac. 525].)

■ Appellants' second point on appeal in the case of *Savage* v. *Pacific Fire Ins. Co.* is that respondents misrepresented to appellants as to the ownership of a part of the insured property, therefore, the contracts of insurance were void. The policy provided: "Unless otherwise provided for by agreement endorsed thereon, or added thereto, this entire policy shall be void, . . . (b) if the interests of the insured be other than unconditional and sole ownership.'' The evidence showed the personal property in ques-

tion to be in the exclusive possession of respondents; only a small balance of the purchase price remained unpaid. Their ownership was actual and substantial. In *McCollough v. Home Ins. Co.*, 155 Cal. 659, at 662 [18 Ann. Cas. 862, 102 Pac. 814, 815], we find the rule to be: "An equitable title in the insured is a sufficient compliance with the condition in question. A vendee in possession of property under a valid contract of purchase which he is entitled to enforce specifically, is the holder of such equitable title. . . . And the great weight of authority supports the proposition that such vendee is the 'sole and unconditional owner', within the meaning of the policy, even though a portion of the purchase price may yet remain unpaid."

Under the facts shown there was sufficient evidence to justify the finding of the trial court on this point.

Judgment affirmed.

Marks, Acting P. J., and Jennings, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on September 8, 1932, and an application by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on October 10, 1932.