### TRINITY UNIVERSAL INS. CO. v. DE MARTINI et al.

#### No. 3693.

Court of Civil Appeals of Texas. El Paso.

June 23, 1938.

Rehearing Denied July 14, 1938.

Touchstone, Wight, Gormley & Price, of Dallas, for appellant.

Louis R. Stein and McBroom & Clayton, all of El Paso, and Honey & Mayall, of Stockton, Cal., for appellees.

NEALON, Chief Justice.

This case involves an appeal from a judgment of the District Court of El Paso County, Texas, in favor of appellees and against appellant, a Texas corporation, in amounts as follows: For Miss Aida R. DeMartini, $10,219.41, with seven per cent interest from March 19, 1935, until paid, and in favor of Louis R. Stein as administrator of the estate of Mary Cooney, for the sum of $10,099.50, with interest at the rate of seven per cent per annum from September 18, 1935, until paid. Originally there were two cases in the District Court. The cases were consolidated for trial.

These cases grew out of an automobile accident which took place in the State of California, in which Mary Cooney, now deceased, and Miss DeMartini, one of appellees herein, were injured when struck by a car driven by one B. MacDonnell.

Both of these ladies recovered judgment in suits brought in the State of California against MacDonnell. Hence, the suits against appellant, which had issued a policy of public liability insurance to MacDonnell. The policy was in full force and effect at the time of the accident. The policy provided that one obtaining judgment on account of injuries covered by the policy might proceed against the insurance company if, because of the assured's insolvency or any other cause, the judgment was not satisfied within thirty days after its rendition. These conditions were met. Plaintiffs alleged that under the terms of the policy, since MacDonnell was insolvent, each of them was entitled to recover to the extent of $10,000. Miss Cooney died prior to the institution of the action here involved, and Mr. Stein was appointed and qualified as ancillary administrator in Texas.

Appellant pleaded and proved that at the time of the filing of the suits in El Paso County there was pending a suit in the United States District Court for the Northern District of California, Southern Division, upon the Equity Docket of said court, in which appellant sought judgment under the Declaratory Judgment Act of Congress (Title 28, Sec. 400, U.S. Code, 28 U.S.C.A. § 400), to determine if appellant was liable to Miss DeMartini and the representatives of Miss Cooney, by reason of said policy of insurance, and that said cause in California had progressed to the point where the Judge had heard and overruled motions of the defendants therein to dismiss the suits. It alleged that the cause was coming up for final disposition in the Fall of 1937. It contended that the suit in the California Federal Court gave that court exclusive jurisdiction of the controversy. These matters were set up by way of plea in abatement; and, subject to said plea, it answered by general demurrer, general denial and a plea that the policy was void because of breach of alleged warranties upon the part of MacDonnell with respect to the ownership of the automobile. The case was tried by the court without the intervention of a jury. Pleas to the jurisdiction and of abatement were overruled and judgment entered as hereinbefore recited, from which judgment the defendant below appealed.

A short narrative of the transactions out of which this controversy grows is here given. During August, 1934, Burleson MacDonnell obtained employment with the State Emergency Relief Administration of the State of California as a timekeeper. The authorities of that department of the State Government required him to have an automobile that he could use in his work, and required that public liability insurance be carried on the vehicle naming the employer as well as the employee as the insured, and that it be filed in the San Francisco office of the Emergency Relief Administration, Insurance Department. MacDonnell was financially unable to purchase an automobile. One of his friends, Rudolph Gesswein, with whom he was residing and who was assisting him, bought a car from E. A. Test, and agreed with MacDonnell that the latter should repay him out of his mileage checks issued by his employer. Gesswein testified: "I bought the car and transferred it into Burleigh MacDonnell's name at the time for Burleigh. I did not buy it for myself." Prior to its purchase by Gesswein the car had been registered with the "Division of Registration of the Department of Motor Vehicles" of the State in the name of Frank Manning as registered owner and E. A. Test as legal owner. Manning and Test, at the time Gesswein purchased the car, by a writing transferred their interests to B. MacDonnell, who was named as "first transferee" and R. Gesswein, who was named as "second transferee" and "new legal owner." The car was at first registered with the Motor Vehicle Department in the name of Gesswein as both legal and registered owner. Though MacDonnell had fully reimbursed Gesswein prior to the accident, the car was not registered in his name as "registered owner" until subsequent thereto. However, he had exclusive possession, use and control of it at all times subsequent to its purchase by Gesswein—at which time it was delivered to MacDonnell.

The arrangement between MacDonnell and Gesswein rested in parol. According to Gesswein it was understood that he was to retain the legal title, though MacDonnell was to be named as the registered owner.

The California Motor Vehicle Act provides that the proper authorities shall, upon the registration of a vehicle for use upon the public highways, "issue a certificate of registration to the owner and a certificate of ownership to the legal owner, or both to a person who is both owner and legal owner." St.Cal.1931, p. 2104, § 41. Among other things the Act provides that upon the transfer of a title or interest "of a legal

owner or owner in or to a vehicle registered under this act * * * the person or persons whose title or interest is to be transferred and the transferee shall write their signatures with pen and ink upon the certificate of ownership. * * * Within 10 days thereafter, the transferee shall forward * * * the certificate of ownership so endorsed * * * to the [proper authorities for registration]." St. Cal.1929, p. 514, § 45. There is a further provision that until the proper division shall have issued the new certificate of registration and certificate of ownership, "delivery of such vehicle shall be deemed not to have been made and title thereto shall be deemed not to have passed and said intended transfer shall be deemed to be incomplete and not to be valid or effective for any purpose." St.Cal.1929, p. 514, § 45.

On August 20, 1934, MacDonnell applied at the office of Lowen W. Loy, an insurance broker at Stockton, California, then agent for the General Casualty Insurance Company, for the insurance required by the employer. Loy's clerk, who was authorized to act for him in the premises, was acquainted with MacDonnell and knew that he was employed by the Emergency Relief Administration of California as a timekeeper, and that by virtue of said employment he was compelled to carry public liability insurance. MacDonnell told her that he wished a policy similar to one that had been issued to Raggio, another employee of the State. He made no formal application. Neither did he make any statement as to the legal ownership of the vehicle, and Miss March, the clerk, made no inquiry, giving as a reason that legal ownership was not material for the class of insurance that MacDonnell sought, to-wit, public liability and property damage insurance. The policy was written in the General Casualty Company of America and named MacDonnell and the State of California as the assured. It was mailed by MacDonnell to his employer's representative. Later Mr. Haney, the agent of the General Casualty Company, recovered the policy from the representative of the State because his Company had ceased to write this character of policy at the reduced rate offered. Mr. Haney then secured from appellant the policy here involved. Appellant's agent, Russell, issued it at the instance and request of Haney. MacDonnell made no representations and signed no application, nor does it appear that he authorized anyone else to do so. Appellant's agent delivered the policy to the said Emergency Relief Administration at San Francisco and mailed a copy to Loy. The same agent wrote a similar policy for Raggio. MacDonnell was never in possession of the policy issued by appellant and, was not familiar with the statements, conditions and provisions contained therein until sometime after the accident. A special endorsement provided that the Insurance Division of the SERA at San Francisco would be given ten days written notice before any cancellation of the policy should become effective.

Under a schedule of statements attached to the policy of insurance, and by reference made a part thereof, the following appeared: "The automobile described herein is paid for in full and is not mortgaged except in the amount of: No exceptions." Among what were styled the express conditions, limitations and agreements of the policy is one that recites that all rights thereunder are strictly personal to the assured and that the entire policy shall be void, unless otherwise provided by agreement in writing added thereto, "if the interest of the assured in the subject of the insurance be or become other than unconditional and sole lawful ownership, * * * or if there be any lien, mortgage or other incumbrance" not specifically set forth in Statement 11 of the policy.

The policy contained an "omnibus" provision extending the coverage to any person permitted by the owner to drive the car.

### Opinion

 The appellant challenges the jurisdiction of the District Court of El Paso County upon the ground that the United States District Court for the Northern District of California, Southern Division, has exclusive jurisdiction, a suit having been instituted in that Court by appellant prior to the bringing of the actions herein involved, the suit being the one hereinbefore referred to as having been brought under the provisions of the Federal Declaratory Judgment Act. By another proposition appellant assails the action of court in refusing to stay the suits pending the final determination of the California case as an abuse of discretion. It is no longer an open question in Texas that the pendency of a suit in a Federal District Court of this or any other State is not ground for abatement of an action in a district court of the State. The cause of

action herein involved is transitory in its nature. The defendant is a Texas corporation. The relief sought is a judgment in personam. The Texas rule is declared in International & G. N. R. Co. v. Barton, 24 Tex.Civ.App. 122, 57 S.W. 292, to be that: "As the federal courts derive their power and jurisdiction from a different sovereignty from that of the state courts, in that sense they are foreign jurisdictions, in like manner as the courts of different states are foreign to each other; and therefore the pendency of a prior suit in a federal court will not abate a suit subsequently brought in a state court between the same parties, and for the same cause of action." In support of its holding the Court cited a number of authorities, including six decisions of the Supreme Court of the United States and several decisions by Federal Circuit Courts of Appeal. This Court followed the rule in Northwest Engineering Co. v. Chadwick Machinery Co., Tex.Civ.App., 93 S.W.2d 1223. The same rule was restated by the Supreme Court of the United States in Chicago, R. I. & P. R. Co. v. Schendel, 270 U.S. 611, 46 S.Ct. 420, 70 L.Ed. 757, 53 A.L.R. 1265, citing Kline v. Burke Construction Co., 260 U.S. 226, 43 S.Ct. 79, 67 L.Ed. 226, 24 A.L.R. 1077.

█ From our preliminary statement it will be seen that the policy was issued in the State of California, in which State appellant, a Texas corporation, was represented and doing business; that the assured resided in said State; that the accident in which Misses DeMartini and Cooney were injured took place in said State; and that, therefore, the laws of California are controlling. The trial court was confronted with the duty of making findings of fact as to the rights and liabilities of the parties under the law of California. It was stipulated that certain decisions of California as shown in the Reports cited in trial briefs of the parties should be accepted for what they purported to be. All California decisions hereinafter cited were in evidence in accordance with the stipulation.

█ By assignment of error No. 7 appellant challenges the judgment of the trial court on the ground that at the time of the accident in question MacDonnell was not the sole and unconditional owner of the automobile in question under the California law, and by assignment No. 8 it assails the judgment upon the ground that the undisputed evidence showed "a breach of that provision of the policy which warranted that the automobile in question was fully paid for." The trial court found as a fact that under the law of California by issuing the policy without any representations upon the part of assured, appellant is presumed to have had knowledge of the actual conditions existing as to title and ownership, debts and incumbrances upon the vehicle covered. Such is the holding of the California courts, and that holding is binding upon us in this case. See Raulet v. Northwestern Nat. Ins. Co., 157 Cal. 213, 107 P. 292, in which the Supreme Court of California, commenting upon an alleged violation of a policy provision by the existence of a chattel mortgage upon part of the insured property, in a case in which there was no written application, no actual fraud, no intentional misrepresentation, and the assured was ignorant of the particular provision of the policy, and no inquiry was made by the Company as to the existence of any chattel mortgage, after referring with approval to the rule that persons are presumed ordinarily to be familiar with the terms of written contracts to which they are parties, said that the rule should not be strictly applied to insurance policies; that it was a matter of almost common knowledge that very few policyholders were actually cognizant of the provisions of their policies; that the policies are prepared by experts of the companies; that they are highly technical in their phraseology; and added (page 298): "The insured usually confides implicitly in the agent securing the insurance, and it is only just and equitable that the company should be required to call specifically to the attention of the policyholder such provisions as the one before us." This rule was followed in Hutchings v. Southwestern Automobile Ins Co., 96 Cal.App. 318, 274 P. 79; Dunne v. Phoenix Ins. Co., 113 Cal.App. 256, 298 P. 49; and in Wong v. Stuyvesant Insurance Co., 100 Cal.App. 109, 279 P. 1050 (hearing denied by the Supreme Court), as well as in Ames v. Employers Casualty Co., 16 Cal.App.2d 255, 60 P.2d 347 and in Kahn v. Commercial Union Fire Ins. Co., 16 Cal. App.2d 42, 60 P.2d 177. These cases support the findings of fact by the trial court as to the law of California upon these questions and its conclusion that by issuing the policy without making inquiry as to these matters appellant waived and is now

estopped from urging any of its defenses as to the validity of the policy.

 Appellant challenges the 6th finding of fact to the effect that the provisions of the policy in question with reference to ownership or incumbrances were not warranties; and under the laws of California were not material to the risk of public liability. The California courts follow the rule that the language of an exemption attached to a policy by which it is proposed to limit the risk assumed is to be construed liberally in favor of the assured and strictly against the insurer in the general provisions of the policy. Indeed the Supreme Court of California, in Coniglio v. Conn. Fire Ins. Co., 180 Cal. 596, 182 P. 275, 276, 5 A.L.R. 805, said: "It is to be remembered that contracts of this sort are to be interpreted in the light of the fact that they are drawn by the insurance companies and are rarely, if ever, understood by the people who pay the premiums. Every rational indulgence must be shown the assured. Raulet v. Northwestern Nat. Insurance Co., 157 Cal. 213, 107 P. 292." It further said that a statement will not be held to be an express warranty if it can be perceived from the terms of the policy that such was not the intention of the parties. Wheaton v. North British Insurance Co., 76 Cal. 415, 18 P. 758, 9 Am.St.Rep. 216; National Bank of D. O. Mills & Co. v. Union Insurance Co., 88 Cal. 497, 26 P. 509, 22 Am. St.Rep. 324, in which the court said (page 504, 26 P. page 509 of the opinion): "Conceding that the statement in the policy, if taken by itself, and without reference to other portions of that statement, viz., 'it is understood and agreed that the within described premises have been leased by Messrs. Walden & Co.,' is an express warranty, under section 2607 of the Civil Code, which reads, 'A statement in a policy, of a matter relating to the person or thing insured, or to the risk, as a fact, is an express warranty thereof,' nevertheless if, taking the entire policy in all its terms and language, it can be perceived that such was not the intention of the parties, such an expression will not be held to be an express warranty. And, where there is any doubt as to the construction to be given to language in such a matter, 'the court should lean against that construction which imposes upon the assured the obligation of a warranty.' First National Bank v. Hartford Ins. Co., 95 U.S. [673] 679 [24 L.Ed. 563]." Nor does this conflict with the Texas rule as stated by our Supreme Court in Phoenix Assurance Co. v. Munger Improved Cotton Machinery Mfg. Co., 92 Tex. 297, 49 S.W. 222, 225. In conformity to this rule the trial court correctly held that the statements, representations, warranties and conditions relating to sole and unconditional ownership, debts and incumbrances, did not apply to appellant's liability under the risk covered, namely, personal injuries to third parties. Sly v. American Indemnity Co., 127 Cal.App. 202, 15 P.2d 522; Berliner v. Travelers' Ins. Co., 121 Cal. 458, 53 P. 918, 41 L.R.A. 467, 66 Am. St.Rep. 49; California Civil Code, § 1654; Mah See v. North American Accident Ins. Co., 190 Cal. 421, 213 P. 42, 26 A.L.R. 123.

 The evidence warrants the finding of the trial court that MacDonnell had an insurable interest in the car. According to Gesswein's testimony he purchased the car for MacDonnell and delivered it to the latter with the agreement that he should be reimbursed from MacDonnell's collections for mileage. The California Supreme Court held in Coniglio v. Conn. Fire Ins. Co., supra, that a conditional vendee had at least an insurable interest to the extent of payments made by him. In Dunne v. Phoenix Ins. Co., supra, it is said that (298 P. page 51) "a purchaser of personal property has an insurable interest therein, although he has not fully paid the purchase price nor acquired title." The fact that a balance was owing upon the personal property did not take it out of the category of property owned solely and unconditionally by the vendee was held in Savage v. Norwich Union Fire Ins. Society, 125 Cal.App. 330, 13 P.2d 955, citing McCollough v. Home Ins. Co., 155 Cal. 659, 102 P. 814, 18 Ann.Cas. 862, to the effect that an equitable title is a sufficient compliance with such condition. See also Votaw v. Farmers Automobile Interinsurance Exchange, Cal.App., 65 P.2d 924. Under the evidence MacDonnell was, within the holdings of the California courts, the sole and unconditional owner of the automobile covered by the insurance policy.

 Appellee further assigns as error failure of the court to render judgment in its favor as against Stein, Administrator, because his suit against appellee was filed more than twelve months after the accrual of the cause of action sued upon. There was no error in the court's ruling. The provision of the policy relied upon applies only to loss or damage to the property in-

sured. It makes no mention of the right of recovery by a third person who has secured judgment against the assured and whose judgment is unsatisfied. Upon its face it applies only to loss by theft or fire or some other circumstances usually covered by insurance on property. It might well apply to a loss suffered by the owner or one holding the lien, but not to a loss suffered by persons claiming no interest in the property itself. This seems clear to us from the wording of the provision. However, under the California rule, if there be any ambiguity in the provision it must be resolved against appellant.

All of appellant's assignments of error have been considered and are overruled.

Judgment is affirmed.