## SMITH v. JIM DANDY MARKETS, Inc. et al.

## CENTRAL MFRS. MUT. INS. CO. et al. v. JIM DANDY MARKETS, Inc.

### No. 11982.

United States Court of Appeals
Ninth Circuit.
Feb. 11, 1949.

Rehearing Denied March 10, 1949.

Clyde Thomas and Milan Medigovich, both of Los Angeles, Cal., for appellant Smith.

Thomas P. Menzies and Harold L. Watt, both of Los Angeles, Cal., for appellants Central Mfg. Mut. Ins. Co. and others.

Harry G. Sadicoff, of Los Angeles, Cal., for appellee Jim Dandy Markets.

E. Eugene Davis and W. W. Hindman, both of Los Angeles, Cal., for appellee, Fireman's Fund Ins. Co.

Before STEPHENS, BONE and ORR, Circuit Judges.

ORR, Circuit Judge.

Appellants, Central Manufacturers' Mutual Insurance Company, hereinafter called Central, and Indiana Lumbermen's Mutual Insurance Company, hereinafter called Indiana, some time during the year 1946, issued insurance policies to appellee Jim Dandy Markets, Inc., on a building known as the Atlantic Market. Appellee Fireman's Fund Insurance Company, a corporation, hereinafter referred to as Fireman's, issued a policy to appellant Smith on the same building. The building was subsequently destroyed by fire. Uncertainty existing as to their liability, if any, Central and Indiana brought an action pursuant to the Declaratory Judgment Act, 28 U.S.C.A. § 400 [now §§ 2201, 2202].

The facts are: Smith leased two adjoining lots situate in Bell, California. The period of the lease was from August 1, 1942, to August 1, 1947, with an option to extend the period for an additional five years. One of the provisions of the lease was that existing improvements on the premises and those added during the term of the lease were the property of Smith and could be removed by him at the expiration of the lease.

In July 1945 the Atlantic Market, and seven others owned or leased by Smith, including fixtures, machinery and equipment, were by him leased or subleased to Jim Dandy Markets who operated them under that arrangement for approximately one year. Later Smith and Jim Dandy Markets entered into a supplementary agreement for the sale of Smith's interest in the various properties and leases connected with the business. By the terms of the agreement Jim Dandy Markets agreed to buy " * * * all of the fixtures, machinery and equipment located and contained in all of the markets * * * ", and it was further agreed that the original leases under which some of the lots, including the Atlantic Market, were held by Smith, were to be assigned to Jim Dandy Markets. The total consideration for the transfer was $225,000. Under the earlier agreement Jim Dandy Markets was given an option to buy fixtures and equipment at the termination of the ten year lease for the sum of $192,-500.

The Atlantic Market building, which was severed from the realty by the original lease, was not specifically mentioned in the assignment which, in part, reads: " * * * I, E. F. Smith * * * do hereby sell, assign and set over * * * a certain indenture and lease * * * subject to the rents, covenants and conditions contained in said lease * * * ". Subsequent to the 1945 sub-lease, but prior to the 1946 supplementary agreement, Smith insured the Atlantic Market with Fireman's in the sum of $16,700 against loss by fire, and it was subsequent to the execution of the supplementary agreement that Jim Dandy Markets secured fire insurance policies on the Atlantic Market from Central and Indiana, each policy being in the sum of $12,-500. Each of the above mentioned policies conform to § 2071, California Insurance Code. The Atlantic Market was destroyed by fire on January 14, 1947. At the time of the fire, insurance premiums on each of the above mentioned policies were paid to date. Jim Dandy Markets had made all payments due Smith under the terms of the supplementary agreement. These payments were completed on July 30, 1947, and all documents relating to the transaction, which had theretofore been placed in escrow, were delivered to Jim Dandy Markets.

Central and Indiana, in bringing the declaratory relief action, named as parties Jim Dandy Markets, Fireman's and Smith. An answer was filed by Smith and he also filed a cross-complaint against Jim Dandy Markets wherein he demanded reformation of the lease, should the court determine that the assignment transferred the title of the Atlantic Market to Jim Dandy Markets.

In approaching a determination of the liabilities of the insurance companies under the respective policies the question of whether or not the 1946 assignment of the lease which Smith executed to Jim Dandy

Markets included the Atlantic Market building is of first importance. If it did not, and Smith remains the owner, then he had an insurable interest and suffered the loss incurred by the fire. The assignment did not expressly mention the building, nor would such mention be expected in the usual situation where the building is part of the realty. The original lease given Smith provided that improvements on the land should belong to the lessee (Smith) and he (Smith) was given the right to remove them at the termination of the lease.

An analogous factual situation is found in California Annual Conf. of Methodist, Episcopal Church v. Seitz, 74 Cal. 287, 15 P. 839. There, a lessee owned buildings on land held by him under a lease, and later assigned " * * * all my right, title, and interest in and to the within lease * * *". It was held that this instrument transferred title to the buildings to the assignee. The rationale of the court's opinion was that in light of the circumstances of that case the assignment manifested an intent by both parties that ownership of the buildings was to be transferred. It was not held that every such assignment carries with it interests in buildings which have been severed from the land. We must, therefore, look to the circumstances of this case to determine the intent of Smith and Jim Dandy Markets in executing the written assignment.

■ The trial court found that the assignment was intended by both parties to convey Smith's interest in the building as well as the land to Jim Dandy Markets. A series of agreements between the two parties culminated in the assignment. In the agreements executed by them we find no reference to rent for the Atlantic Market, which would reasonably be expected if Smith intended to reserve ownership of the building while Jim Dandy Markets remained in occupancy. It is also significant that the land lease, fixtures, equipment and machinery had no usefulness apart from the building. The supplementary agreement between the parties evidences an understanding that Jim Dandy Markets was to buy out Smith's interest in the eight stores in order to gain complete control over the facilities by which it carried on its grocery business. This purpose could not be attained through the transfer of the land and equipment, but not the store building. A reservation by the assignor of the right to remove the building, which is an essential part of the entire business, would plunge the agreement into inconsistency and confusion. These factors give weight to a construction of the assignment that includes a transfer of all of Smith's rights growing out of the assigned lease and support the trial court's finding that at the time of the fire Smith had conveyed the building to Jim Dandy Markets, conditioned on payment of the sales price.

■ The finding of the trial court that the assignment manifested the intent of both parties that the building should be transferred being upheld, it follows that no reformation of the assignment may be had. Reformation requires clear and convincing evidence of a mutual mistake. Calif.Civ. Code, §§ 3399, 3400, 3401; Burt v. Los Angeles Olive Growers Ass'n, 175 Cal. 668, 675, 166 P. 993.

■ In California, Jim Dandy Markets, as conditional vendee in possession of personalty, had an insurable interest as the sole owner of the property within the meaning of the policies issued by Central and Indiana. Savage v. Norwich Union Fire Insurance Society, 125 Cal.App. 330, 13 P.2d 955; Votaw v. Farmers Automobile Inter-Insurance Exchange, Cal.Sup., 85 P.2d 872. The vendee bears the risk of loss and is entitled to recover on his policies with appellant insurance companies.

■ It is argued that even if the assignment transferred the building to Jim Dandy Markets, Smith had an insurable interest in the building because of his lien thereon for the payment of the balance of the purchase price, and therefore should recover on his policy with Fireman's Fund Insurance Co. This argument fails because, regardless of Smith's interest in the building, he suffered no loss from its destruction. Under California law, which we are required to follow, a fire insurance policy is a personal indemnity contract and a showing of pecuniary damage is prerequisite to recovery thereon. Davis v. Phoenix Insurance Co., 111 Cal. 409, 415, 43 P.

1115; Alexander v. Security-First Nat'l. Bank, 7 Cal.2d 718, 723, 62 P.2d 735; 14 Cal.Jur. 464, § 37.

Judgment affirmed.