## CHICAGO, M. & ST. P. RY. CO. *v.* PULLMAN PALACE-CAR CO.

*(Circuit Court, N. D. Illinois.* March 28, 1892.)

EQUITY PRACTICE—OBJECTIONS TO BILL—WAIVER—ACCOUNTING.

   A bill for an accounting charged that complainant and defendant entered into a contract, in the nature of a partnership agreement, that the defendant was to keep the books and render monthly accounts to the complainant, and that the defendant fraudulently misstated such accounts. The defendant answered, denying the charges, but averring that it did not object to an accounting. *Held,* that it was too late, on motion for a reference, for the defendant to insist that the charges in the bill were not sufficiently specific.

In Equity. Bill by the Chicago, Milwaukee & St. Paul Railway Company against the Pullman Palace-Car Company for an accounting.

*John W. Cary* and *Edwin Walker,* for complainant.

*Isham, Lincoln & Beale* and *J. L. Runnels,* for defendant.

GRESHAM, Circuit Judge. This is a suit by the St. Paul Company against the Pullman Company for an accounting. On September 22, 1882, the parties entered into a written agreement for the operation of sleeping-cars, parlor and dining cars, by the defendant on the lines of the complainant, for joint account. The complainant had previously operated its own sleeping, parlor, and dining-room equipment, and, by the terms of the agreement, the defendant acquired a one-fourth interest in the cars on the lines. It was contemplated that additional equipment would be needed, and that it should be acquired and owned jointly, upon the same terms. It was made the duty of the defendant "to keep full and complete books of account, showing all the expenses, receipts, losses, and profits arising from the operation" of the cars; and so much of the general expenses of the defendant were to be added to the specific expenses of the cars, operated under the contract, as the number of such cars bore to the whole number of cars run by the Pullman Company on all lines operated by it. It was made the duty of the defendant to balance the accounts as often as once a month, and pay to the complainant three-fourths of the profits, thus ascertained, on or before the end of the month following. Losses were to be borne, one-fourth by the defendant and three-fourths by the complainant. The complainant was given the option to terminate the partnership relation on six months' written notice to the defendant before three stated periods, which right was exercised by giving the necessary notice that the agreement would terminate on September 30, 1890. The parties thereupon agreed that the fair cash value of the defendant's one-fourth interest in the equipment was worth $105,000, which the complainant refused to pay, for the alleged reason that an accounting would show it was entitled to a much larger sum from the defendant.

   After setting out the terms of the agreement, the bill, on information and belief, avers that, although the defendant rendered monthly statements purporting to show the earnings and expenses, in gross, for each of the sleeping-cars operated for joint benefit, the charges for expenses

were grossly excessive and fraudulent; that the defendant retained out of the joint earnings $70,452.96 for cost of cleaning cars, and $49,289.89 for laundry work, for the entire term of the contract, which amounts were grossly in excess of actual payments by the defendant for those purposes; that the defendant retained out of the gross earnings $11,863.16 for money claimed to have been paid for car supplies, which amount was grossly in excess of the actual expenditure for that purpose; that for the month of April, 1890, the defendant retained, for division and district expenses, $838.72, and for administration expenses, $524.48; that the amounts retained for such expenses during each of the preceding months were substantially uniform; that the aggregate amount retained on account of division and district expenses for the entire term of the contract was $100,677.45, and for administration expenses, $58,806.36, and that such charges were grossly excessive; that the defendant obligated itself, at its own expense, to maintain the equipment of the cars, including carpets, upholstery, bedding, fittings, and other appointments incidental to a sleeping-car, and not essential to an ordinary first-class passenger-car, in good and cleanly condition, and renew the same whenever necessary, and that the defendant wrongfully and fraudulently retained for this purpose, out of the gross earnings, $73,353.61; that in December, 1888, the defendant constructed and added to the joint equipment five new sleeping-cars, at a uniform charge to the complainant of $17,180.38, and demanded payment therefor; that this amount is grossly in excess of the actual cost of construction, plus 10 per cent. thereon, which the defendant was entitled to under the terms of the agreement, and that the complainant expended $25,000 for upholstery and repairs with which it was not chargeable under the contract, no part of which has been refunded by the defendant. The bill also charges that, during the term of the contract, both written and verbal notice was given to the defendant by the complainant that the bills rendered of operating expenses and maintenance of equipment were excessive, and that the complainant repeatedly protested against the correctness of such bills. The charges in the bill, except the last one, are expressly denied by the answer. If this charge is denied, it is only done inferentially. The answer avers that the complainant received monthly statements showing the full amount of earnings and expenses; that monthly settlements were made upon the basis of these statements; and that, with the knowledge of all the facts now known to the complainant, it regularly received its full share of the joint earnings. Other averments in the bill and answer need not here be noticed.

The case is at issue, but the parties are not able to agree as to what questions shall be referred to the master. Although the answer avers that the defendant does not object to an accounting, it now insists that the master should be required to take testimony, and report (1) whether or not the defendant kept books of account as required by the contract, and (2) whether or not the accounts were stated and settled monthly, the complainant all the time knowing the facts relied on in the bill. The bill was not demurred to, and it is now too late for the defendant's

counsel to insist that the charges are not sufficiently specific. If they are true, the complainant has not received its full share of the joint earnings. Even if the books appear to have been properly kept, (and it is not disputed that the defendant kept books of account,) and the complainant received its full share of the joint earnings thus shown, it has the right to establish by competent evidence, if there be such, that the books are not correct, and that the defendant took credit for more money than it expended or was entitled to retain. It was stated at the argument that the complainant would be satisfied with a reference covering the six months prior to the termination of the agreement, and, if unable to establish its charges for that time, it would not ask a reference covering any of the preceding periods. An order will therefore be entered referring the case to Mr. Henry W. Bishop, one of the masters, to take testimony, and report to the court whether, during the months of April, May, June, July, August, September, October, and November, 1890, without the knowledge or consent of the complainant, the defendant deducted from the gross earnings amounts in excess of actual expenses, or in excess of what it was entitled to deduct and retain under the agreement, and, if it did, that the account between the parties be stated, showing the balance due from one to the other for said months.