NOBLE BRASFIELD DANIEL ET AL *v.* ANDREW GEORGE GOESL.

No. A-7965. Decided December 7, 1960.
Rehearing Overruled January 25, 1960.
(341 S.W. 2d Series 892)

*John D. Raffaelli, Raffaelli* and *Keeney,* of Texarkana, for petitioner.

*Norman C. Russell, Atchley, Russell & Hutchinson,* of Texarkana, for respondent.

MR. JUSTICE CULVER delivered the opinion of the Court.

All of the parties before us in this cause are medical doctors and were members of a partnership formed for the practice of medicine. One of the provisions in the articles of partnership reads as follows:

"RESTRICTIONS ON RETIRING PARTNERS. If any partner retires from the partnership, unless the partnership is dissolved by mutual consent of all partners, said retiring partner shall not for a period of three (3) years after so retiring from the partnership practice medicine, or in any way be connected with any other person in the practice of medicine, directly or indirectly, in either Bowie County, Texas, or Miller County, Arkansas."

Dr. Goesl retired from the partnership on August 11, 1958. On August 17, 1959, the doctor opened his office and began the practice of medicine in Texarkana, Miller County, Arkansas.

Dr. Daniel and other members of the partnership filed suit to enjoin Dr. Goesl from practicing medicine in violation of the terms of the partnership agreement. Upon a hearing temporary injunction was denied by the trial court. The Court of Civil Appeals has affirmed. 336 S.W. 2d 890. We are of the opinion that the temporary injunction should have been granted.

The partnership agreement under which Dr. Goesl became a member of the partnership was executed by all of the partners on August 11, 1953. It provided that the partnership could be dissolved and terminated at any time by a vote of 75% of the partners. The restriction from the practice of medicine for a period of three years was applicable only to a partner retiring from the partnership and not where the partnership was dissolved. If the partnership were dissolved the partnership assets were to be divided among the partners, but if a partner retired the remaining partners were obligated to execute a note to him payable in 12 equal monthly installments. The amount of this note was to be determined from the book value of the partnership and the "good will" which was to be valued at a sum equal to 75% of the accounts receivable. Accordingly, a note was executed by the remaining partners and delivered to Dr. Goesl in the sum of $20,-306.02, secured by a lien on the partnership assets. Upon payment of the final installment on August 11, 1959, Dr. Goesl executed a release of the lien. He makes no complaint that he was paid less than was due. It is to be noted that six days later Dr. Goesl opened his office for the practice of medicine.

■ Dr. Goesl correctly contends that, in an appeal from an order either granting or denying an application for a temporary injunction, the sole question for determination is whether or not the trial court abused its discretion. So where the order of the trial court is based on conflicting evidence it will not be disturbed. Texas Foundries, Inc. v. International Moulders & Foundry Workers' Union et al., 151 Texas 239, 248 S.W. 2d 460.

There is evidence in the record of dissatisfaction and disagreement among the partners created in part by a charge that one of the partners was not devoting his full time to the partnership business and a dispute concerning the rent on the quarters occupied by the partnership in a building owned by two of the partners. Dr. Goesl thereupon sought a dissolution but was unable to secure the assent of the required majority. He then elected to retire and contends now that since the remaining partners contributed to the dissension which existed and refused to dissolve the partnership, they had failed to do equity and were therefore not entitled to equitable relief of a temporary injunction. We think his position in this respect is not well taken. The provisions in the agreement for dissolution must have contemplated the possibility of such dissatisfaction and discord, and the desire of one or more of the partners to dissassociate themselevs from the firm.

Dr. Goesl further testified that he had been led to believe

that the provisions of the restrictive covenant would not be applied to himself and the other original members of the partnership, but only to those who would thereafter be admitted. He maintains this raise a fact issue and was sufficient to sustain the action of the trial court on the ground that the partnership agreement was ineffective because of fraud in the inducement. Now, aside from the question of the admissibility of that evidence, conflicting as it clearly does with the express terms of the agreement executed by the doctor, yet he cannot avail himself of that defense for another reason.

Prior to making his decision Dr. Goesl inquired of the remaining partners if they would enforce the restrictive covenant against him in the event he chose to retire, and received the reply that they "would stick to the terms of the contract." He was also present at a meeting when the remaining partners insisted upon applying the restrictive covenant to another original member of the partnership who retired shortly before. Dr. Goesl also employed an attorney to seek an amicable dissolution and through that attorney threatened to file suit if his efforts toward that end were not successful. Despite all this Dr. Goesl chose to retire and to accept all of the benefits provided to a retiring partner in the terms of the agreement.

Dr. Goesl's letter of his intention reads in part as follows:

"In accordance with Paragraph 19 of the Partnership Agreement of Daniel-Harrell Clinic, notice is hereby given of my intention to retire from the partnership to be effective upon the next anniversary date thereof.

"Request is hereby made that the bookkeeper and the auditor of the partnership be directed to determine the book value of the partnership in accordance with the provisions thereof, the value of my capital account, and such other information as may be necessary to determine the amount of the note payable to my order to be executed by the remaining partners."

■ Dr. Goesl having elected to retire and having demanded and accepted the benefits accruing to him as provided for in the agreement cannot accept that part of the contract beneficial to him and deny the application of other provisions of the contract which may be detrimental. Doty v. Barnard, 92 Texas 104, 47 S.W. 712. To paraghrase what we said in Guadalupe-Blanco River Authority v. City of San Antonio, 145 Texas 611, 200 S.W. 2d 989, 997, Dr. Goesl seeks to retain the beneficial part of the transaction and to

repudiate the disadvantageous part because of the alleged fraud of the other party. This he may not do.

■ If a person is induced by fraud to enter into a contract, but receives and accepts benefits under the contract after becoming aware of the fraud he affirms and is bound by the terms of the contract. Rosenbaum v. Texas Building & Mortgage Co. 140 Texas 325, 167 S.W. 2d 506. By the same token and for the same reasons he will not be heard to say after accepting all the retirement benefits that some of the other partners breached the contract first by neglect of and inattention to the medical practice. He could have had that questin resolved in court as he threatened to do but he voluntarily chose a different course.

Dr. Goesl contends that his demand for and acceptance of the benefits under the agreement will not work an estoppel against him because he received nothing more than he would have been entitled to had there been a dissolution. Possibly in a dissolution Dr. Goesl might have ultimately obtained as much as he did on retirement but that is not the test. The agreement provided that on dissolution the physical properties of the partnership would be sold for the best price obtainable and the disposition of the accounts receivable handled in the manner deemed most advantageous. On the other hand Dr. Goesl received his pro rata share of the properties and the accounts receivable at their book value without having to await their sale and collection. Thus it cannot be said that he did not receive benefits that would constitute a consideration in fact and in law.

■ Dr. Goesl contends that the injunction could not have been granted because the remaining partners did not show and prove irreparable injury or that the restrictive covenant was both reasonable and necessary to protect their medical practice and for that proposition relies on such cases as Super Maid Cook-Ware Corp. v. Hamil, 50 Fed. 24 830; Southern Properties v. Carpenter, Texas Civ. App., wr. dism. 21 S.W. 2d 372; Grace v. Orkin Exterminating Co., Texas Civ. App. wr. ref., n.r.e. 255 S.W, 2d 279; Denny v. Roth, Texas Civ. App., 296 S.W. 2d 944, er. ref. These were cases involving the application of a restrictive covenant to discharged employees and generally state the rule to be that such restrictions are valid and enforceable only to the extent that they are shown to be reasonably necessary for the protection of the good will and business of the employer. While we do not question the correctness of that statement it is not applicable to the situation presented here. Here we do not have the case of a discharged employee, but rather that of a partner voluntarily retiring and

taking advantage of the contractual benefits bestowed on him by virtue of his retirement. Our case is tantamount to that where one sells his business holding conditioned upon and in part consideration for his promise not to engage in a similar business within a reasonable territory and for a reasonable time. It was not necessary for the remaining partners to prove the extent or the probable extent of their damage. Goldberg v. Soltes, 32 S.W. 2d 246; Welsh v. Morris, 81 Texas 159, 16 S.W. 744; Malakoff Gin Co. v. Riddlesperger, 108 Texas 273, 192 S.W. 530.

The rule is thus stated in Corpus Juris Secundum, Injunctions, section 840, p. 566:

"Where an established business has been sold with its good will and there is a valid covenant not to compete, a breach is regarded as the controlling factor and injunctive relief follows almost as a matter of course. In such cases the damage is presumed to be irreparable, and the remedy at law is considered inadequate. It is not necessary that the buyer first prove special pecuniary damages or show an actual loss of customers who might in any event have discontinued their patronage. Injunctive relief may be given, even though only nominal damages are shown or although no actual damage is shown."

We are of the opinion that under the undisputed facts in this case the petitioners were entitled to a temporary injunction as a matter of right and the trial court's failure to grant the temporary injunction was an abuse in law of the discretionary power vested in him.

The judgments of the trial court and the Court of Civil Appeals are therefore reversed and the cause remanded to the trial court with the instruction that the temporary injunction as prayed for be granted.

Opinion delivered December 7, 1960.

Rehearing overruled January 25, 1961.