**ORKIN EXTERMINATING COMPANY, Inc.,
Appellant,**

v.

**MASSACHUSETTS BONDING AND IN-
SURANCE COMPANY et al., Appellees.**

No. 14673.

Court of Civil Appeals of Texas.

Houston.

Dec. 9, 1965.

On Motions for Rehearing Feb. 17, 1966.

Second Motion for Rehearing Denied
March 17, 1966.

Robert H. Singleton, Houston, Butler, Binion, Rice, Cook & Knapp, Houston, of counsel, for appellant.

The Kempers, Houston, John D. Richardson, Houston, of counsel, for appellee.

Newton Gresham and Sam W. Cruse, Houston, on motion for rehearing amicus curiae.

COLEMAN, Justice.

By this suit appellant seeks to recover from appellee the amounts paid by appellant to satisfy a judgment previously secured against it by Gulf Coast Rice Mills. The cause of action is based on a comprehensive liability insurance policy. Both parties filed motions for summary judgment based on the pleadings, admissions, depositions and affidavits before the court. The trial court sustained appellees' motion and entered judgment that appellant take nothing.

At the time of the occurrence forming the basis of the liability of appellant to Gulf Coast Rice Mills, appellant carried with appellee a comprehensive liability insurance policy, pertinent provisions of which read:

II. Defense, Settlement, Supplementary Payments. As respects the insurance afforded by the other terms of this policy the company shall: ·

(a) defend any suit against the insured alleging such injury, sickness, disease or destruction and seeking damages on account thereof, even if such suit is groundless, false or fraudulent; but the company may make such investigation, negotiation and settlement of any claim or suit as it deems expedient;

* * * * * *

(c) pay all expenses incurred by the company, all costs taxed against the insured in any such suit and all interest accruing after entry of judgment until the company has paid, tendered or deposited in court such part of such judgment as does not exceed the limit of the company's liability thereon;

* * * * * *

(e) reimburse the insured for all reasonable expenses, other than loss of earnings, incurred at the company's request.

The amounts incurred under this insuring agreement, except settlements of claims and suits, are payable by the company in addition to the applicable limit of liability of this policy.

* * * * * *

9. Notice of Accident. When an accident occurs written notice shall be given by or on behalf of the insured to the company or any of its authorized agents as soon as practicable. Such notice shall contain particulars sufficient to identify the insured and also reasonably obtainable information respecting the time, place and circumstances of the accident, the names and addresses of the insured and of available witnesses.

10. Notice of Claim or Suit. If claim is made or suit is brought against the insured, the insured shall immediately

forward to the company every demand, notice, summons or other process received by him or his representative.

11. Assistance and Cooperation of the Insured. The insured shall cooperate with the company and, upon the company's request, shall attend hearings and trials and shall assist in effecting settlements, securing and giving evidence, obtaining the attendance of witnesses and in the conduct of suits. The insured shall not, except at his own cost, voluntarily make any payment, assume any obligation or incur any expense other than for such immediate medical and surgical relief to others as shall be imperative at the time of accident.

This policy of insurance was issued as of January 1, 1955. In August, 1955, appellant's employees, in an attempt to eradicate the pests which were causing damage to milled rice owned by Gulf Coast Rice Mills and stored in its warehouse, blew dust containing lindane into the warehouse. This dust settled on and around the sacks containing the rice and small amounts of the lindane sifted through the sacks onto the rice. Soon thereafter an agent of the U. S. Food and Drug Administration inspected the premises and barred shipment of the rice in interstate and foreign commerce. Over a period of months discussions were held by agents of the Rice Company with the agents of the local, state and federal officials concerned, culminating in a decision to re-mill the rice. Thereafter, appellant was presented with a statement of the loss sustained by the rice mill, which was reported to the home office of appellant on May 24, 1956. On June 28, 1956, notice of the claim for damages was first given to representatives of the insurance company. Appellee's insurance adjuster immediately determined from the employees of appellant when and how the claimed damage occurred and the amount of the claim and sent this information to the Insurance Company.

By the terms of the policy of insurance, appellant deposited certain sums of money with the insurance company as a standard premium, subject to a "retrospective Rating Plan D," which prescribed in detail the method to be followed in computing the final premiums. The company was required to compute the retrospective premium based upon incurred losses valued as of a date six months after the termination of the policy. This constitutes the final premium if all claims have been closed. If claims are pending, then a further review is required annually after the first review. The retrospective premium is defined to be the sum of the basic premium, the excess loss premium, and the modified losses multiplied by the applicable state tax multiplier; each of the terms concerned with premiums is defined. "Incurred Losses" is defined as the sum of (1) all losses, including medical actually paid, (2) reserves for unpaid losses as determined by the company, and (3) allocated loss expenses. There is also a further provision that "incurred lossess" do not include amounts, exclusive of allocated loss expense, in excess of $10,000.00 for any one accident for property damage liability. "Modified Losses" means the "incurred losses" multiplied by a loss conversion factor set out in the policy. After the retrospective premium is determined, the insured is either refunded part of the standard premium he had previously deposited, or required to pay an additional premium depending on his loss experience.

Appellee made its first computation of the restrospective premium during August or September, 1956, and on September 19, 1956, credited appellant with a substantial return of premium. In making this computation a reserve of $1,000.00 was set up for the Rice Mill claim as an incurred loss. As a result the premium return credit was $1,000.00 less than it would have been had no reserve been set up on the Rice Mill claim. In effect the premium paid by appellant at this time was increased by the sum

of $1,000.00 because of the reserve set up for this claim.

On September 20, 1956, the Superintendent of Claims for the Insurance Company wrote appellant a letter with reference to this claim requesting a label from a bag of lindane and copies of literature available to appellant concerning the use of lindane. In this letter these statements are found:

"We feel we have a very dangerous situation on our hands in so far as this claim is concerned, and we will appreciate your co-operation and assistance in combatting the allegations of these claimants.

"For your information we are sending you a copy of the signed statement secured from your representative, Joe D. Preston, in order that it may help you to determine what information we will need to·defend this claim."

Appellant, in reply to this letter, sent the information requested together with a letter dated October 23, 1956, in which appeared this statement: "I wish to apologize for the delay in answering your letter and trust that the information contained herein will be useful to you in defending this particular claim."

Between August, 1956, and January, 1957, the adjuster made a thorough investigation of the claim and made periodic status reports to the Superintendent of Claims. On January 1, 1956, and again on January 1, 1957, the policy of insurance was renewed.

In January, 1957, the second computation of the retrospective premium was made and the reserve for the Rice Mill claim was increased to $10,000.00. This computation was reflected in the claim analysis received by appellant on July 15, 1957. By this analysis appellee determined that the "Modified Losses" arising from the claim as computed under the premium plan would result in an increase in premiums of about $11,-856.00, the maximum which could be charged under the plan for full protection against the claim. The net premium due was paid on receipt of statement October 31, 1958.

Correspondence between the adjuster and the Superintendent of Claims reflects that the adjuster inquired as to the position which the company intended to take relative to liability on the claim in view of the late notice received and also raised a question as to whether the incident from which the claim arose constituted an "accident" as contemplated by the insurance policy. During the investigation the adjuster interviewed agents of the Rice Mill and had conferences with the attorney representing it from whom he received an opinion that the claim might be settled for 50% of itemized damage.

In March, 1957, the adjuster wrote a letter to the Superintendent of Claims, in which appeared an implied criticism of the cooperation which he had received from appellant. In reply he received a letter in which this statement appeared: "We have no reason to criticize our assured for failure to cooperate with us in the handling of any claim in the past and we do not feel that they should be criticized now in this instance."

The investigation continued into the summer of 1957. On June 25, 1957, Gulf Coast Rice Mills filed suit against appellant and citation was served on July 6, 1957. On July 22, 1957, the adjuster brought a proposed "Non-Waiver" agreement to appellant's Houston office and stated that unless it was signed the appellee would be unable to file an answer in the .suit on behalf of appellant. The Houston manager secured authority by telephone and signed the agreement as presented. This agreement reads:

"It is hereby agreed by and between the Massachusetts Bonding and Insurance Company and the Orkin Exterminating Company, Inc. that no action heretofore or hereafter taken by the Massachusetts Bonding and Insurance Company shall be construed as a waiver of the right, if any, of the Massachusetts Bonding and Insurance Company to deny liability to the Orkin

Exterminating Company, Inc. under a policy of insurance which is claimed by the Orkin Exterminating Company, Inc. to cover claims asserted or which may hereafter be asserted by R. L. Williams and J. M. Chumney, doing business as a partnership under the name of Gulf Coast Rice Mills as either the bases of the suit brought in its name as Plaintiff in Cause No. 488,534 against Orkin Exterminating Company, Inc. as Defendant therein in the District Court of Harris County, Texas, or otherwise.

"It is also agreed that by the execution of this agreement the Orkin Exterminating Company, Inc. does not thereby waive any rights under the said policy."

Prior to this time appellee had not indicated to appellant that it was considering denying liability by reason of late notice or denying coverage under the terms of the policy. There had been no previous suggestion that a non-waiver agreement would be required.

There is testimony that because Orkin believed that the Insurance Company was investigating the claim and would defend on its behalf, prior to July 22, 1957, Orkin had retained no lawyers to represent it, and had made no independent investigation of the matter; that it relied on the insurance company to defend its interests and was not prepared to defend the suit when the non-waiver agreement was presented. There was also testimony that Orkin made no attempt to settle the claim because the matter was being handled by the insurance company. There is also testimony that the insurance company never gave the adjuster authority to settle the claim and that he entered into no settlement negotiations.

It is undisputed that notice was first given to appellee on June 28, 1956, of the fact that appellant had applied lindane dust to the warehouse belonging to Gulf Coast Rice Mills in August, 1955, and that a claim for damages was being asserted by the Rice Mills by reason of this occurrence. Appellee relies on this delayed notice as a defense to its liability on the policy. Appellee further denies that the occurrence constituted an accident as that term is used in the policy.

It is undisputed that after appellee undertook the investigation of this claim, and after it was fully informed of Orkin's delayed notice, appellee charged and collected from appellant a premium for the various insurance policies which appellant carried with it, which premium was $1,000.00 more than it would have been had not appellee set up a reserve of $1,000.00 as an incurred loss on this claim. Thereafter this reserve was increased to $10,000.00, which, by reason of the retrospective rating plan, resulted in again increasing the premium charged appellant. The audit showing such increased reserve, together with an invoice reflecting the increased premium, was sent to appellant. These actions were taken before appellant was advised that appellee intended to rely on its policy defenses and before coverage was denied, as well as before the non-waiver agreement was presented to appellant. Part of this premium was paid from deposits held by appellee and the balance was paid in due time after the non-waiver agreements were executed.

Appellant pled, and here asserts, that appellee has waived its policy defenses, and is estopped to assert them, by this course of conduct. With the exception of the question of policy coverage, fact issues are clearly raised as to each of these questions. Glens Falls Ins. Co. v. Bendy, Tex.Com.App., 58 S.W.2d 1; Carolina Ins. Co. v. Christopher, Tex.Com.App., 130 Tex. 245, 106 S.W.2d 138, opin. adopted; American National Ins. Co. v. Wiggins, Tex. Civ.App., 4 S.W.2d 595; Trinity Universal Ins. Co. v. De Martini, Tex.Civ.App., 118 S.W.2d 901, error ref.

In Southland Life Ins. Co. v. Lawson, 137 Tex. 399, 153 S.W.2d 953, 136 A.L.R. 1212, the Court quoted with approval from the opinion of the Supreme Court of the United States in Globe Mutual Ins. Co. of

New York v. Wolff, 95 U.S. 326, 24 L.Ed. 387, as follows:

" 'The doctrine of waiver, as asserted against insurance companies to avoid the strict enforcement of conditions contained in their policies, is only another name for the doctrine of estoppel. It can only be invoked where the conduct of the companies has been such as to induce action in reliance upon it, and where it would operate as a fraud upon the assured if they were afterwards allowed to disavow their conduct and enforce the conditions.' "

■ We are of the opinion that the testimony heretofore summarized establishes, in the absence of testimony to the contrary, the elements of estoppel.

■ A party will not be allowed to assume the inconsistent positions of affirming a contract in part by accepting or claiming its benefits, and disaffirming it in part by repudiating or avoiding its burdens. Daniel v. Goesl, 161 Tex. 490, 341 S.W.2d 892.

■ At the time the non-waiver agreement was executed appellee had debited appellant with an increased premium because of this claim. Under the terms of the policy the insuring agreements, including the obligation to defend groundless suits, are subject to the conditions of the policy concerning notice of accidents and forwarding of claims. We are unable to agree that a claim could constitute an incurred loss under the policy, where notice of the accident was given eight months after it occurred, unless the company waived the policy condition requiring notice as soon as practicable. We construe the language of the non-waiver agreement to the effect that "no action heretofore or hereafter taken" by the company shall be construed as a waiver of its right, if any, to deny liability under the policy, to mean no action taken in the investigation of this particular claim or the defense of the suit brought by reason thereof.

The charging and accepting of increased premiums is not such action as would be affected by the non-waiver agreement since such actions are only indirectly related to the investigation of the claim and the defense of the suit, and are not such actions as would reasonably be within the contemplation of the parties.

■■ Non-waiver agreements are strictly construed against the insurer and liberally in favor of the insured. Highway Ins. Underwriters v. Griffith, Tex.Civ.App., 290 S.W.2d 950, ref., n. r. e. The agreement that no action by the insurer would constitute a waiver will not be construed to bar the insured from setting up the actions of the insurer as a basis for invoking the doctrine of estoppel.

■ It is well settled, however, that coverage under an insurance policy cannot be created or broadened by reason of an estoppel beyond the risk contractually assumed under the terms of the policy. Great American Reserve Ins. Co. v. Mitchell, Tex.Civ.App., 335 S.W.2d 707, error ref.; Washington National Ins. Co. v. Craddock, 130 Tex. 251, 109 S.W.2d 165, 113 A.L.R. 854; White v. Great American Reserve Ins. Co., Tex.Civ.App., 342 S.W.2d 793.

The policy of insurance under consideration agrees to indemnify insured against liability for property damage caused by accident. Appellee contends that there is no coverage in this instance since the damage foreseeably resulted from the flowing of the lindane dust into the warehouse, and the natural and ordinary consequences of a negligent act do not constitute an accident.

■ While there is authority to the contrary, the majority rule appears to be that stated in Appleman, Insurance Law and Practice, Vol. 7A, Sec. 4492, p. 7, as follows: "Injuries resulting from ordinary negligence are considered to have been accidental as has been the case even though gross negligence were shown, where there was no actual intent to injure."

The Texas cases support this statement of the law. American Indemnity Co. v. Jamison, Tex.Civ.App., 62 S.W.2d 197; Travelers Ins. Co. v. Reed Co., Tex.Civ. App., 135 S.W.2d 611, dism., judg. corr.

■ There is no evidence that the lindane was applied for the purpose of injuring the rice located in the warehouse, or with the intent to cause damage to Gulf Coast Rice Mills. Since the claim of Gulf Coast Rice Mills was predicated on acts committed negligently, even in violation of law, but not with the intent to inflict injury, such claim was within the coverage of the insurance policy. Bundy Tubing Company v. Royal Indemnity Company (6th Cir., Mich.), 298 F.2d 151; Maryland Casualty Co. v. Mitchell, 322 F. 2d 37 (5th Cir., Tex.); Cross v. Zurich General Accident & Liability Co. (7th Cir. Ill.), 184 F.2d 609.

■ Appellant has contended that the non-waiver agreement is ineffective because it is supported by no consideration. Since appellees were estopped to assert the policy defenses at the time the non-waiver agreement was signed, and the loss was within the coverage of the policy, appellee was obligated to defend the suit and the non-waiver agreement was without consideration. Home Ins. Co. of New York v. Lake Dallas Gin Co., Com.App., Texas, 127 Tex. 479, 93 S.W.2d 388, opinion adopted; 269 Canal Street Corporation v. Zurich General Accident & Liability Ins. Co., 226 App.Div. 516, 235 N.Y.S. 63; Home Indemnity Co. v. Williamson (5th Cir., Miss.), 183 F.2d 572.

■ We are of the opinion that appellant's contention that their right to plead and prove waiver of policy conditions by reason of actions of the insurer was preserved to them by the clause in the non-waiver agreement reading: "It is also agreed that by the execution of this Agreement the undersigned does not thereby waive any rights under the said policy."

This contention was made in New Amsterdam Casualty Co. v. Hamblen, 144 Tex. 306, 190 S.W.2d 56, and the Supreme Court of Texas held that if the insured failed to give notice of an accident or suits as soon as reasonably possible, the failure invalidates the claim for indemnity. The court further held that where the claim was already invalid on the date notice of the claim was given to the insurer, the insured had no right *at that time* to require payment by the insurer so that the quoted language from the agreement could not preserve such a right to the insured. The court held that "rights under the said policy" did not include the right to limit the effect of the non-waiver agreement.

Since the language of the non-waiver agreement, as well as that of the policy conditions, in that case are substantially the same as in this case, it is decisive of the contention in this case.

Appellant has also urged that the insurer impliedly offered to extend coverage to this claim, even if it should be held not within the coverage of the policy as written, by charging and collecting the additional premium and by representing that the claim would be defended by the company, and that by paying the premium the offer was accepted by appellant by reason of which a new contract to insure was created. There was no express agreement to this effect, either oral or in writing. The rationale for implying such a contract would necessarily be a species of estoppel in the absence of such an agreement.

There is authority that an insurance contract may be modified by subsequent parol agreement. Canfield v. Newman, Tex.Civ. App., 265 S.W. 1052; Stadtler v. Southern Surety Co., Tex.Civ.App., 253 S.W. 681; United Bankers Life Ins. Co. v. Matthews, Tex.Civ.App., 275 S.W.2d 179, ref.; n. r. e. In each of these cases, however, there was testimony from which agreements could be found under well recognized rules of contract law.

This case is determined by the cases heretofore cited holding that coverage of an insurance policy cannot be extended beyond the language of the policy by estoppel.

While appellant also filed a motion for summary judgment, the action of the trial court in denying its motion was not brought before this Court. Gulf, Colorado & Santa Fe Railway Co. v. McBride, 159 Tex. 442, 322 S.W.2d 492.

The judgment of the trial court is reversed and the cause remanded.

### On Motions for Rehearing

On this motion for rehearing we have been favored with a brief by Amicus Curiae raising a question which has given us serious concern. The Amicus Curiae states this proposition:

"A casualty insurance company is required under the laws of this State to establish a reserve for a potential loss even though liability for it may be denied and since premium rates are fixed by the State the charging and accepting of a premium payment cannot be grounds to avoid the terms of an executed non-waiver agreement so as to hold the insurance company estopped to deny coverage under the policy."

Article 21.39 of the Insurance Code, V.A.T.S. provides:

"Every insurer shall maintain reserves in an amount *estimated* in the aggregate to provide for the payment of all *losses* or *claims* incurred on or prior to the date of statement, whether reported or unreported, which are unpaid as of such date and for which such insurer *may be liable*, and also reserves in an amount estimated to provide for the expenses of adjustment or settlement of *such claims*. The Board of Insurance Commissioners shall adopt each current formula for establishing reserves applicable to each line of insurance recommended by the National Association of Insurance Commissioners and all companies writing the line of insurance to which each such adopted formula is applicable *shall establish* reserves in compliance therewith. Acts 1951, 52nd Leg. ch. 491; Acts 1955, 54th Leg., p. 413, ch. 117, § 52." (Emphasis supplied)

If, therefore, in this case the insurer was required by law to set up a reserve on the claim made by the Rice Mill against their assured, and if the amount of such reserve is determined by a formula prescribed by the Board of Insurance Commissioners, it could not in reason be held that the establishment of such a reserve could be the basis of an estoppel unless the prescribed formula permitted the insurer to differentiate between claims which in reasonable probability will result in losses, and claims which probably will not result in a loss.

The record does not disclose whether the regulations of the Insurance Board require that a full reserve be established on an unfounded claim or whether it is the usual practice of well managed insurance companies to set up on their books reserves adequate to pay a claim when it is their considered opinion after investigation that no liability exists.

The policy provides that the company shall make a computation of the retrospective premium based upon *incurred losses* valued as of a date six months after the termination of the policy. It further provides that the premium so computed shall be the final premium if all *claims* have been closed or if it is apparent that the retrospective premium will exceed the maximum. If all claims have not been closed and the retrospective premium does not exceed the maximum, a further computation based upon *incurred losses* valued as of a date eighteen months after the termination of the policy is required. Provision is made for further computation if necessary. *"Incurred losses"* is defined in the policy to include *losses* actually paid, reserves for *unpaid losses* as determined by the company, and allocated *loss* expenses. The policy does not provide that the pre-

mium be based on *claims* for which liability is not conceded. The word *"loss"* is not defined in the policy. In Black's Law Dictionary, 4th Ed., the word *"loss"*, as applied to insurance, is defined:

"Ascertained liability of insurer, Michel v. American Fire and Casualty Co., C.C.A. Fla., 82 F.2d 583, 586; * * * injury or damage sustained by insured in consequence of happening of one or more of the accidents or misfortunes against which insurer has undertaken to indemnify the insured, 1 Bouv.Inst. No. 1215; pecuniary injury resulting from the occurrence of the contingency insured against, Ocean Accident & Guaranty Corporation v. Southwestern Bell Telephone Co., C.C.A.Mo., 100 F.2d 441, 446; * * * Loss from liability is loss which arises when liability becomes fixed, Cormier v. Hudson, 284 Mass. 231, 187 N.E. 625, 627; Boney v. Central Mut. Ins. Co. of Chicago, 213 N.C. 470, 196 S.E. 837, 842 [117 A.L.R. 231]."

In Manhattan Life Ins. Co. v. Stubbs, Com.App., 1921, 234 S.W. 1099, the company was sued for penalties and attorney's fees by reason of the delay of the company in paying a "loss" after demand by insured. The court said:

"Plaintiff in error also contends that the maturing of a 15-year endowment life insurance policy, at the end of said period, is not a 'loss,' in the meaning of said article 4746 of the statutes. We cannot concur in this view. The maturing of the policy, whether by death of the insured or the arrival of the end of the cumulation period during the lifetime of the insured, would have the same effect. *The liability* attaches in either event, and a loss has occurred." (Emphasis added)

In Miles v. United Services Automobile Ass'n, Tex.Civ.App.1941, 149 S.W.2d 233, aff'd United Service Automobile Ass'n v. Miles, Com.App.1942, 139 Tex. 138, 161 S.W.2d 1048, the court quoted the following definition of "loss", found in Webster's New International Dictionary, with ap-

proval: "Destruction of or damage to the subject insured; or the death or injury of an insured person by the perils insured against *in such a manner as to charge the insurer with a liability* under the terms of the policy." (Emphasis added)

The phrase "reserves for unpaid losses as determined by the Company" must be held to mean reserves in an amount determined by the company to be adequate to cover all claims for which the company concedes liability. If the company is required by law to maintain reserves on claims for which the company denies liability, nevertheless the policy does not require or authorize that such reserves be considered in computing premiums. If liability is subsequently established, the policy provides for a recomputation of the premium. The policyholder is not required to pay for protection which he does not obtain.

It follows, therefore, that the inclusion of the reserve set up for the Rice Mill claim by appellee as an "incurred loss" in computing the retrospective premium charged appellant constitutes an admission that appellee was liable under the policy to indemnify appellant for the loss, if any, which appellant might sustain by reason of the Rice Mill claim.

The policy for which the premium charge was made insured appellant against many different risks and covered its operations in a number of states. However, prior to the time appellee secured the non-waiver agreement it had charged and collected a premium $1,000.00 in excess of that it would have been entitled to collect had not this claim been considered an "incurred loss". At the end of eighteen months after the termination of the first policy year it had recomputed the premium as required by the policy because all claims had not been settled, and the retrospective premium did not exceed the maximum. This computation was furnished to appellant before the non-waiver agreement was presented and reflected an additional pre-

mium charge by reason of the fact that the reserve for the Rice Mill claim was increased and included in "incurred losses".

We find no basis for the inclusion of the estimated expense of an investigation to determine the liability of the company under the policy to furnish a defense to a suit against its insured as an "incurred loss." Nor do we think the company can include as an "incurred loss" the estimated cost of making such a defense without admitting liability unless it *first* secured a non-waiver agreement.

We remain of the opinion that at the time the non-waiver agreement was executed appellee was estopped as a matter of law to deny that it had waived the provisions of the policy requiring prompt notice of accidents and the immediate forwarding to it of claims.

Amicus curiae are concerned in that under their construction of the original opinion of this Court insurance companies could not charge a premium based upon a reserve for contingent liability and expense in any situation where a claim is being handled under a non-waiver agreement. Certain language in our opinion might be so construed. We restrict our holding in that respect to the facts in this record. It is our holding that in light of this record the policy in question did not authorize a premium charge based on a reserve for a contingent claim where liability under the policy was not conceded. We further point out that the acts on which waiver and estoppel as a matter of law were predicated occurred prior to the execution of the non-waiver agreement. If an insurance company is authorized by the terms of a policy to charge a premium based on a reserve for contingent liability, it is probable that the charging of such premium would not amount to a waiver or constitute an ele-

ment of estoppel even in the absence of a non-waiver agreement.

We remain of the opinion that appellant's rights under the policy, as they existed at time of the execution of the non-waiver agreement, were preserved by the terms of that instrument. On re-examination of the record we find that appellant properly presented in this Court its point that the trial court erred in denying its motion for summary judgment. Since we have held that appellee is estopped to insist on its policy defenses and have held that the loss sustained by appellant is within the coverage of the policy, the amount of the loss not being in dispute, we are of the opinion that appellant's motion for summary judgment should have been sustained by the trial court.

Appellees' motion for rehearing is denied. Appellant's motion for rehearing is granted. The judgment of the trial court is reversed and judgment is here rendered that appellant, Orkin Exterminating Company, Inc., have judgment against appellee, Hanover Insurance Company, in the sum of Fifty Four Thousand Six Hundred Twenty One and No/100 ($54,621.00) Dollars, together with interest at the rate of 6% per annum (1) on the sum of Twenty Six Thousand Seven Hundred Twenty and $21/100$ ($26,720.21) Dollars from the 8th day of July, 1963; (2) on the sum of Twenty Six Thousand One Hundred Ninety Two and $50/100$ ($26,192.50) Dollars from the 3rd day of September, 1963; (3) on the sum of Nine Hundred Eighty Three and $98/100$ ($983.98) Dollars from the 30th day of October, 1963; (4) on the sum of Seven Hundred Twenty Four and $31/100$ ($724.31) Dollars from the 20th day of November, 1963, until the date of entry of this judgment, together with interest on the total judgment from date of entry until paid, and all costs in the trial court and this Court.