**BROOKS GAS CORPORATION, Appellant,**

v.

**SINCLAIR OIL & GAS CO. et al., Appellees.**

No. 14970.

Court of Civil Appeals of Texas.

Houston.

Nov. 17, 1966.

Rehearing Denied Dec. 8, 1966.

Ben G. Sewell, McGregor, Sewell, Junell & Riggs, Houston, and James W. Wilson, Shannon H. Ratliff, McGinnis, Lochridge, Kilgore, Hunter & Wilson, Austin, for appellant.

Richard J. Dent, Tulsa, Okl., Richard P. Keeton, David T. Searls, J. Evans Attwell, William H. Drushel, Jr., Houston, for appellee Skelly Oil Co.; Vinson, Elkins, Weems & Searls, Houston, of counsel.

Horace N. Burton, John R. Scott and Rush Moody, Jr., Midland, for appellee Sinclair Oil & Gas Co.; Stubbeman, McRae, Sealy & Laughlin, Midland, of counsel.

WERLEIN, Justice.

In its motion for rehearing appellant complains that some of the language used in our opinion handed down on November 17, 1966, might be construed as an expression of opinion by this Court as to certain disputed facts and the law applicable thereto,

and that appellant could be prejudiced thereby upon a trial of the case on its merits. In order to avoid any possibility of such construction of the language used in said opinion, we are withdrawing the same and are substituting the following opinion in lieu thereof.

This is an appeal from an order of the trial court denying appellant, Brooks Gas Corporation, a temporary injunction sought against Sinclair Oil & Gas Co., hereinafter called Sinclair, Skelly Oil Company, referred to herein as Skelly, Sinclair Oil & Gas Company and Skelly Oil Company, alleged to be a partnership or a joint venture, Tenneco Oil Co., and Mallard Petroleum, Inc. In its judgment the trial court made certain fact findings and conclusions of law. Such findings are substantially as follows:

Appellant is the owner and operator of a gas processing plant located near Mertzon, Irion County, Texas, and of an associated system of gas gathering pipelines and facilities for the collection of casing-head and gas-well gas from wells located in the Mertzon and· Brooks Field area in Irion County, Texas, and the Velrex Canyon, Velrex Upper Henderson, Velrex Henderson, Velrex Southwest, Velrex South, Case Canyon and Eldorado Canyon Fields area in Schleicher County, Texas, and purchases gas from producers in those areas, extracts the butane, propane and other liquid hydrocarbons from the gas and sells the residue gas to Northern Natural Gas Co., a gas pipeline company. The Mertzon gas processing plant and the gas gathering facilities associated with such plant constitute appellant's only business operation.

Appellees, Sinclair and Skelly, each own a one-half interest in a gas processing plant located near Hulldale in Schleicher County, Texas, and an associated System of gas gathering pipelines and facilities. Appellee Sinclair is the operator of said facilities under a joint operating agreement authorizing Sinclair to operate such facilities on behalf of both Sinclair and Skelly, except that Skelly's approval is required for any capital improvement costing in excess of $5,000.00. The Sinclair-Skelly Hulldale gas processing plant is similar in function to that of appellant except larger since appellees obtain gas from wells in a number of fields in Schleicher, Irion and several other counties for their Hulldale plant; that at the time of the negotiations hereinafter referred to between appellant and Skelly and at the time of the hearing of the temporary injunction by the trial court, the Sinclair-Skelly Hulldale gas gathering pipelines and facilities did not extend into the gas supply areas served by appellant, but such plant was located in the same area as appellant's gas supply area, and only approximately 12 miles away from the area served by appellant in Schleicher County, and thus presented a competitive threat to appellant's position in such area.

On or about February of 1964, B. R. Nunn, assistant to Skelly's gasoline plants Division Manager, approached W. M. Dow, appellant's President, on Skelly's behalf for the purpose of entering into negotiations looking to the purchase of plaintiff's gas processing plant and gas gathering system. Dow advised Nunn that though appellant would be interested in negotiating with Skelly for an interest in appellant's system, it would not divulge to Skelly the detailed confidential information including trade secrets necessary to an evaluation by Skelly of appellant's system because of Skelly's ownership of a one-half interest in the Sinclair-Skelly Hulldale plant, and the potential threat presented to appellant's gas purchase and gas processing position in Irion and Schleicher Counties by such plant. Nunn advised Dow that Sinclair-Skelly had no plan or intention of extending its gas gathering system into any of the gas supply areas served by appellant and that Skelly would give appellant any assurance required by appellant to protect appellant's position. Dow advised Nunn that in addition to an agreement not to divulge information provided by appellant and the

agreement not to use such information to appellant's detriment, appellant would require an agreement that the Sinclair-Skelly Hulldale system would not be extended into the gas supply areas served by appellant, and that appellant would not furnish any information unless such conditions were agreed to by Skelly. Nunn agreed to such conditions on Skelly's behalf and stated that Sinclair's concurrence would be unnecessary since Skelly would have to approve any extension of the Hulldale system into the areas of appellant's gas supply.

On April 10, 1964, Nunn came to Dow's office to obtain the information requested by Skelly for the purpose of evaluating appellant's plant, but before Dow would release such information he required that Nunn sign a letter setting forth specifically the purpose for which the information was provided and the agreements and conditions under which the information was to be given Skelly. This letter was signed and agreed to on behalf of Skelly by Nunn, and reads as follows:

"We are submitting to you herewith on a confidential basis a report entitled, 'Description of Mertzon-Brooks Gas Gathering and Processing System, Irion and Schleicher Counties, Texas,' together with Appendix I containing system maps and gas reserve isopach maps, and Appendix II containing copies of gas purchase and residue gas sales contracts. This material is being furnished at your request so that Skelly Oil Company can evaluate its desires to purchase an interest in our operations.

"It is agreed that the information furnished on the Mertzon-Brooks system will be held by Skelly Oil Company in strict confidence and will be revealed only to the necessary and authorized representatives of Skelly Oil Company. Skelly agrees to promptly notify Brooks the names and positions of all Skelly representatives to whom the enclosed information on the Mertzon-Brooks system is revealed.

"It is further agreed that Skelly will in no manner use the information furnished on the Mertzon-Brooks system to the detriment of Brooks Gas Corporation and/or Mertzon Corporation, nor will in any way hinder or undermine Brooks Gas Corporation's gas purchase and gas processing position in Irion and Schleicher Counties, Texas.

"It is agreed that one copy only of the information as described by the attached lists of contents has been furnished to Skelly Oil Company and that this information will not be reproduced in whole or in part. It is further agreed that all of this information will be returned to Brooks by Skelly within 90 days from this date, along with either a purchase proposal or an expression of no interest by Skelly. It is further agreed that Brooks Gas Corporation has willingly furnished this information to Skelly on the above conditions and that Skelly has no obligation to purchase any part of the Mertzon-Brooks System, nor to pay any fee to Brooks Gas Corporation."

The written information submitted by appellant after Nunn signed said letter included the narrative statement setting forth a general description of appellant's processing plant and gas gathering system and its operations, description of all processing and gathering equipment, a summary of all gas purchase contracts and appellant's gas sales contract, detailed information on the plant's processing capacity, the plant's record for recovery of products from gas, information on product sales contracts and products sales, and detailed information on gas reserves and potential field development in the fields served by appellant, and a summary of past, current and projected economics of appellant's system. In addition, Skelly was given two large folders of written instruments including a list of

equipment utilized in appellant's plant and system, and various system maps and gas reserve isopach maps and copies of appellant's gas contracts, some of such material being of a confidential nature and constituting trade secrets.

The court further found that the language of said letter to the effect that Skelly would not "in any way hinder or undermine Brooks Gas Corporation's gas purchase and gas processing in Irion and Schleicher Counties, Texas," considered in the light of all of the surrounding circumstances constituted an agreement and covenant on the part of Skelly that the Hulldale system would not be extended in appellant's gas supply area in said counties and that Skelly would not approve any extension of the said system into appellant's gas supply area. The court found that appellant and Skelly negotiated in good faith concerning the possible sale of an interest in appellant's system to Skelly, but no sale was consummated.

The court also found that sometime late in 1965, Nunn acting on Skelly's behalf, approved an extension of the Hulldale system into the Eldorado Canyon Field in Schleicher County, Texas, within appellant's gas supply area as contemplated by the agreement of said parties. Although appellant's gas gathering system did not extend into the Eldorado Canyon Field at the time Nunn signed said letter of April 10, 1964 on behalf of Skelly, appellant's system was connected to wells in the area of said field, and that Dow told Nunn of appellant's negotiations for the purchase of gas in the Eldorado Canyon Field and of its plans to extend its gas gathering system into said field, and also that the Eldorado Canyon Field was within the gas supply area that appellant intended to be protected by said covenant and agreement.

That acting on its own behalf and on behalf of Skelly, Sinclair is constructing a pipeline from the Sinclair-Skelly Hulldale plant to the Eldorado field and unless restrained will complete said pipeline and construct a gas gathering system to gas wells in the Eldorado Canyon Field and connect said system to gas wells in said field and take gas from said wells. The court further found that there is no evidence of probative value that Skelly disclosed to Sinclair or to any other unauthorized person any of the confidential information and trade secrets made available to Skelly by appellant, or that Skelly or Sinclair made any specific use of said information in connection with the extension of the Hulldale gathering system to the Eldorado Canyon Field, or otherwise; that there is no evidence of probative value that Sinclair was aware of the negotiations between Skelly and appellant or of the covenant and agreement by Skelly that the Hulldale system would not be extended to the Eldorado Canyon Field and that Skelly would not approve any extensions into said field.

Based on the foregoing facts as found by the court, the court was of the opinion that Skelly agreed that the Hulldale gas gathering system would not be extended into the Eldorado Canyon Field and that it would not approve any such extension proposed by Sinclair; that Skelly's approval of the extension of the Hulldale gas gathering system to the Eldorado Canyon Field under construction was contrary to such agreement and that the construction of such extension and the connection of such system to wells in the Eldorado Canyon Field and the taking of gas from such wells on Skelly's behalf would be contrary to such agreement; that the connection of such extension to such wells and the taking of gas therefrom would cause appellant irreparable injury, for which it had no adequate remedy at law, and that appellant would be entitled to temporary injunctive relief if the court were not of the opinion that such agreement is in restraint of trade and not within any presently recognized exceptions allowing reasonable restraints in contracts. The court then stated, "If such agreement were shown to be enforceable the court would grant temporary injunctive relief against Defendant Skelly."

The court was of the further opinion that appellant had failed to show any entitlement to temporary relief based on any misuse or threatened misuse of confidential information or trade secrets; and that even if said agreement were not an unenforceable contract in restraint of trade, appellant has failed to show any entitlement to temporary relief against Sinclair.

Prior to submission of this cause both Sinclair and Skelly filed motions to dismiss the appeal, asserting that the only temporary relief sought by appellant was an order enjoining the construction of the pipeline between the Sinclair Hulldale Eldorado plant and the Eldorado gas field in Schleicher County, and that since such pipeline had been completed the appeal was moot. They also asserted that the Federal Power Commission had exclusive jurisdiction over the controversy since service through such pipeline, which was commenced under an order of the Federal Power Commission entered January 17, 1966, could not be discontinued without prior approval of the Commission. This Court concluded that appellant's prayer and appeal encompassed not only the enjoining of the construction of the one pipeline that had been completed, but also included enjoining related gathering facilities into the Eldorado field, or any part thereof, and from doing any act in furtherance thereof. The court, therefore, ordered that appellees' motions to dismiss the appeal, or in the alternative to dismiss the entire cause of action, be refused.

The trial court's findings of fact in its judgment refusing the temporary injunction are supported by evidence of probative force. We are unable to say that the construction placed upon the agreement is contrary to the evidence and facts adduced at the hearing or is contrary to law. The trial court based its refusal of the temporary injunction upon its conclusion that the agreement and covenant between appellant and Skelly was in restaint of trade and not

within any presently recognized exceptions allowing reasonable restraints provided in contracts. In deciding whether the trial court abused its discretion in refusing to grant the temporary injunction, this Court is not limited to a consideration of the grounds or reasons assigned by the trial court for its determination of appellant's cause of action. The law is well settled that an appellate court will sustain the judgment of the trial court if it is correct on any theory of law applicable to the record, regardless of whether or not the trial court gives the correct legal reason for its judgment, or gives any reason at all. Southwestern Associated Tel. Co. v. City of Dalhart, Tex.Civ.App., 254 S.W.2d 819, writ ref., n. r. e.; Construction & General Labor Union, Local 688, v. Stephenson, Tex.Sup. 1950, 148 Tex. 434, 225 S.W.2d 958; Gulf Land Co. v. Atlantic Refining Co., 134 Tex. 59, 131 S.W.2d 73.

The granting or refusing of a temporary injunction is within the sound discretion of the trial court, and its action will not be disturbed on appeal unless it clearly appears that the court has abused its discretion. Harding v. W. L. Pearson & Co., Tex.Com.App.1932, 48 S.W.2d 964; Southwestern Associated Tel. Co. v. City of Dalhart, supra; 31 Tex.Jur.2d 345, Injunctions, Sec. 224, and cases cited. Furthermore, in determining whether the court erred in refusing to grant the injunction, this Court is required to review all the evidence and legitimate presumptions consistent with the record in the light most favorable to the judgment of the trial court's exercise of discretion in denying the temporary injunction. Southwestern Associated Tel. Co. v. City of Dalhart, 254 S.W.2d 819, writ ref., n. r. e.; Bond v. Owen, Tex.Civ.App., 257 S. W.2d 833; Daniel v. Goesl, Tex.Civ.App. 1960, 336 S.W.2d 890, reversed on other grounds 161 Tex. 490, 341 S.W.2d 892.

The trial court was of the opinion that the letter agreement was calculated to prevent competition and was in restraint of

trade and, therefore, invalid. Appellees contend that such agreement was not ancillary to any contract of sale or purchase or employment, or other contract, and hence was invalid because in restraint of trade. A contract not to compete is generally considered in restraint of trade and will not be enforced unless such contract is ancillary either to a contract for the transfer of good will or other subject or property or to an existing employment or contract of employment. Restatement of Contracts, Sec. 515 (1932); Potomac Fire Ins. Co. v. State, Tex.Civ.App.1929, 18 S.W.2d 929, writ ref.; Hyde Corp. v. Huffines, 1958, 158 Tex. 566, 314 S.W.2d 763.

Appellant argues that such letter agreement is not in restraint of trade, and that it is ancillary to appellant's action consisting of delivering to Skelly the confidential data and trade secrets in question; that such data and secrets were in fact turned over to Skelly for the sole purpose of evaluating appellant's plant and facilities and such delivery was in the nature of a bailment to which the contract not to compete was ancillary. In this connection appellant cites Budget Rent-A-Car Corporation of America v. Fein, 5th Cir., 342 F.2d 509. Appellant further contends that the agreement was limited to the particular Eldorado area and had a "built-in" time limit in the estimated 20 year life of the gas production in the Eldorado Field.

■ We cannot say that the trial court abused its discretion in construing the letter agreement as being unreasonably in restraint of trade, and in denying the temporary injunction. The court found that the language of the letter, considered in the light of all the surrounding circumstances, constituted an agreement and covenant on the part of Skelly that the Hulldale system would not be extended in appellant's gas supply area in said counties and that Skelly would not approve any extension of the said system into appellant's gas supply area. The court made no specific finding that such extension would be in restraint of

trade because of the area involved, nor did the court make any finding as to what would be a reasonable duration for the restriction imposed by such agreement. There is nothing in the record to indicate whether the court's decision was based in whole or in part upon the duration of the agreement which was not limited or in whole or in part upon the area to which the agreement would apply. At the time of the letter agreement appellant's gathering facilities had not been extended into the Eldorado fields and were not so extended until July, 1965.

■ Appellant has no point to the effect that the trial court erred in failing to limit the agreement either as to area or duration. It is settled law in this State that though the territory or period stipulated by the parties may be unreasonable, a court of equity may nevertheless enforce the contract by granting an injunction restraining the defendant from competing within an area and for a period of time that are reasonable under the circumstances. Lewis v. Krueger Hutchinson & Overton Clinic, 153 Tex. 363, 269 S.W.2d 798; Spinks v. Riebold, Tex.Civ.App., 310 S.W.2d 668, writ ref.; Weatherford Oil Tool Co. v. Campbell, 1960, 161 Tex. 310, 340 S.W.2d 950. Under the facts of this case, and with no point raising the question, this Court is not disposed to resort to such procedure on this appeal from the court's order refusing to grant the temporary injunction, especially in view of the fact that the court's refusal to grant the same may be upheld on other grounds. Every reasonable presumption which finds support in the evidence and the trial court's findings will be indulged in support of the order of the trial court. Butler v. Butler, Tex.Civ.App., 296 S.W.2d 635; Landwer v. Fuller, Tex.Civ. App., 187 S.W.2d 670, error ref., w. o. m.; International Union of Operating Engineers v. Cox, 1949, 148 Tex. 42, 219 S.W.2d 787.

■ The trial court found, and such finding is supported by the evidence, that appellant had failed to show any entitle-

ment to temporary relief based on any misuse or threatened misuse of confidential information or trade secrets. The court further found that there is no evidence of probative value that Skelly disclosed to Sinclair or to any other unauthorized person any of the confidential information and trade secrets made available to Skelly by appellant, or that Skelly or Sinclair made any specific use of said information in connection with the extension of the Hulldale gathering system to the Eldorado Canyon Field, or otherwise. The court also found that there is no evidence of probative value that Sinclair was aware of the negotiations between Skelly and appellant or of the covenant and agreement by Skelly that the Hulldale system would not be extended to the Eldorado Canyon Field and that Skelly would not approve any extensions into said field.

The court thus found that Sinclair was innocent of any wrongdoing whatever, and that appellant was not entitled to any temporary relief against Sinclair of any kind. The evidence shows that Sinclair first became interested in constructing the pipeline in 1963, and eventually used its own information to conduct economic and engineering studies to determine whether the line in question was justifiable. Because the project would cost in excess of $5,000.00, Sinclair prepared and presented its recommendation to Skelly for Skelly's approval. Up to this time Skelly had not been consulted by Sinclair and none of the information used by Sinclair in its evaluation studies was obtained from Skelly, and Skelly, in no way participated in such studies, and did not help prepare Sinclair's recommendations or requests for approval from Skelly. Appellant admits that Sinclair had no knowledge of Skelly's agreement with appellant and did not acquire knowledge until appellant protested the Sinclair-Skelly plans to construct the line to the Eldorado field. Appellant's president, Dow, testified that Skelly's representative never purported to be acting in Sinclair's behalf. The letter drafted by Dow

was addressed solely to Skelly Oil Company, and according to appellant Skelly informed Dow that Sinclair's concurrence in the agreement would be unnecessary.

■ Appellant now seeks a temporary injunction against Skelly Oil Company, Sinclair Oil & Gas Company, Sinclair-Skelly, and each of them, and seeks to enforce Skelly's covenant not to compete by issuing a temporary injunction against Sinclair-Skelly, which if granted would necessarily result in hardship and loss to Sinclair although there is evidence that it is innocent of any wrongdoing. There is evidence that Skelly and Sinclair are joint adventurers, in connection with the operation of the Hulldale plant, each owning a one-half interest in the enterprise which appellant seeks to enjoin so that any injunction against Skelly with respect to such enterprise would necessarily affect the rights of Sinclair. Under such circumstances the denial of a temporary injunction against Sinclair and Sinclair-Skelly could not be said to be an abuse of discretion. Apparently Skelly is neither operating nor threatening to operate in the area involved other than as a joint owner of the Hulldale plant. The trial court, therefore, did not abuse its discretion in denying the temporary injunction as to Skelly.

The evidence shows that Skelly entered into the agreement with appellant in anticipation of acquiring an interest in appellant's plant which was being operated or likely would be operated in competition with the plant of Skelly-Sinclair, and that Skelly agreed that the information furnished by appellant would be disclosed only to Skelly's necessary and authorized representatives, and that such information would not be used in any manner detrimental to appellant, and further that Skelly would not in any way hinder or undermine appellant's gas purchase and gas processing position in Irion and Schleicher Counties, Texas. Both appellant and Skelly knew of Sinclair's operations in such coun-

ties. Appellant feared competition from the Sinclair-Skelly plant, and knew that Sinclair was the managing co-owner thereof.

The evidence shows that in order to obtain the necessary information to evaluate appellant's plant, Skelly agreed in effect to veto all future efforts by Sinclair to compete with appellant in the area in question if Skelly did not buy an interest in the plant. The evidence shows also that Sinclair first became interested in building the pipeline from the Eldorado field to the Hulldale plant in 1963. The agreement between Sinclair and Skelly originally applied only to some four fields or areas. Later the said parties agreed to extend their joint operations to other fields. Sinclair as the managing operator of the Hulldale plant could make expenditures in connection with its operation for Sinclair-Skelly but had to have the approval of Skelly for any expenditure in excess of $5,000.00. The evidence does not disclose whether Skelly knew prior to its negotiations with appellant that Sinclair had been interested in building a pipeline from the Hulldale plant to the Eldorado field. The evidence does show, however, that Sinclair had attempted to negotiate contracts in the area in question, and also that the business of Sinclair-Skelly had been expanded into a number of other areas serving the Hulldale plant.

This gives rise to a serious question as to whether appellant with knowledge of such facts participated in an agreement with Sinclair's co-owner of the Hulldale plant, which was calculated to injure Sinclair to whom the negotiations were not disclosed, and thus interfere with Sinclair's competition, in operating the Hulldale plant, with appellant's plant and facilities. Skelly was aware of the expansion policy of the Hulldale operation and at least of the possibility that Sinclair in behalf of Sinclair-Skelly might want to extend a line from the Hulldale plant to the Eldorado Field which was only some eleven miles distant, and yet with such knowledge Skelly entered into the agreement with appellant because of appellant's fear of competition with Sinclair-Skelly, that Skelly would veto any effort of Sinclair-Skelly to enter the Eldorado Field. Sinclair asserts that under these circumstances appellant has not come into court with clean hands. Without deciding the point, we are of the opinion that a serious factual issue was raised from which a court in equity might have concluded that appellant was not entitled to a temporary injunction.

From what has been said hereinabove, it appears obvious that this suit involves serious and somewhat complicated controversies, as well as the applicability of legal principles to facts, some of which were found by the trial court and other facts concededly not adduced in evidence or developed. We are of the opinion that these matters should be determined upon a final hearing of the case on the merits and that there was no abuse of discretion by the trial court in denying the temporary injunction. James v. E. Weinstein & Sons, Tex.Com.App.1929, 12 S.W.2d 959; General Drivers, Etc. v. Dallas County Const. Employers' Ass'n, Tex.Civ.App., 246 S.W. 2d 677, error ref., n. r. e.; Whitaker v. Wilson, Tex.Civ.App., 349 S.W.2d 753, writ ref., n. r. e.; Anderson v. Tall Timbers Corporation, 1961, 162 Tex. 450, 347 S.W. 2d 592. We paraphrase the statement of the Supreme Court in the latter case by saying that this opinion is not to be construed as passing on the merits of the case in any respect. Its sole function is to uphold the action of the trial court in denying the temporary injunction.

Motion for rehearing overruled.

Judgment affirmed.